## DELPHI FROSTED FOODS CORP. v. ILLINOIS CENT. R. CO.

### No. 11193.

United States Court of Appeals
Sixth Circuit.

April 10, 1951.

344

Adrian H. Terrell, Paducah, Ky., Terrell, Schultzman & Moore and Adrian H. Terrell, all of Paducah, Ky., on brief, for appellant.

James G. Wheeler, Paducah, Ky., Wheeler & Marshall and James G. Wheeler, all of Paducah, Ky., on brief, for appellee.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This case arises out of a controversy over alleged liability for damage to six cars of frozen fruit, consisting of strawberries, dewberries, blackberries, and peaches, shipped from Paducah, Kentucky, by appellant during July, 1945, over appellee's railroad and connecting carriers. Five of the cars were consigned to Jersey City and one to New Orleans. When the cars were inspected at destination cartons of berries were mashed and broken, cans which contained peaches were dented and the peaches were discolored. Some of the contents were condemned by the United States Food and Drug Administration and only a small amount of salvage was realized. Appellant brought suit for $33,192.18, the claimed value of the fruit, and $1,732.-30 as expense of preparing the salvaged fruit for the market, for sales service and storage.

The case arises under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C., § 20, par. 11, 49 U.S.C.A. § 20(11), which provides that a common carrier or railroad receiving property for interstate transportation "shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier,

railroad or transportation company from the liability hereby imposed * * *."

Appellee contends that as to four of the cars in question, MDT 21740, IC 54400, IC 50187, and IC 50265, appellant was barred from instituting the suit because it had not filed claims in writing within nine months after delivery of the property, in accordance with the bills of lading. Appellee also contends that as to the two remaining cars the fruit was not properly frozen, processed, nor loaded, and hence appellee was not liable. Jury trial was waived. The District Court sustained the contention as to notice and also found that the appellant had not borne the burden of proving that the fruit was in good condition when shipped.

As to the question of notice, each of the bills of lading provides in paragraph 2 (b): "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property. * * *"

Appellant neither gave nor attempted to give notice to the receiving or delivering carrier as to the four cars listed. It appears, however, that certain of appellant's customers who had contracted to purchase portions of the shipment gave notice to the Erie Railroad, the delivering carrier in Jersey City, with reference to the damaged condition of the goods. Certain of these customers later sued appellant in the New York state courts for a refund of amounts paid for the fruit. It was there held that title had not passed to the customers, and appellant thereupon reimbursed all of them.

Appellant contends that the requirement of notice of claim was substantially complied with. It relies upon Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948, which held that a telegram sent by the claimant containing an adequate statement of the claim satisfied the requirement that the claim should be made in writing. In that case the claim, although informal, was made by the plaintiff in the action.

The District Court correctly concluded that the notice contemplated by the bill of lading is to be given by the claimant and not by others. Notice to the delivering carrier was sufficient; but the assertion of damage by persons who had contracted for some portion of the goods, title to which had not passed, persons who were not agents of the appellant, did not constitute such a claim as was required. The bill of lading was authorized under the Interstate Commerce Act, and has the sanctity of a Martin, 283 U.S. 209, 222, 51 S.Ct. 453, 75 L.Ed. 983. To hold that the filing of the claim is dispensed with under the circumstances of this record would be to "alter the terms of a contract, made in pursuance of the Interstate Commerce Act and having, in effect, the quality of a statute of limitation, and thus to open the door for evasions of the spirit and purpose of the act to prevent preferences and discrimination in respect of rates and service." Chesapeake & Ohio Ry. Co. v. Martin, supra, 283 U.S. at page 222, 51 S.Ct. at page 458. While the purpose of the notice is to give the carrier an opportunity to investigate the claim, Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., supra, the identity of the claimant is a material feature of any such investigation. As stated in Appalachian Electric Power Co. v. Virginian Ry. Co., 126 W. Va. 626, 29 S.E.2d 471, the bill of lading clearly contemplates that the person damaged shall file the claim. If the time limit set forth in the provision is reasonable, failure to file the claim is fatal. Southern Pacific Co. v. Stewart, 248 U.S. 446, 39 S.Ct. 139, 63 L.Ed. 350; St. Louis, Iron Mountain & Southern Ry. Co. v. Starbird, Admr., 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917; Gooch v. Oregon Short Line Rd. Co., 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443; American Ry. Express Co., Inc., v. The Fashion Shop, Inc., 56 App.D.C. 114, 10 F.2d 909; Manby v. Union Pacific R. Co., 8 Cir., 10 F.2d 327; Insurance Co. of North America v. Newtowne Mfg. Co., 1 Cir., 187 F.2d 675. As expressly stated in the opinion therein, Hopper Paper Co. v. Baltimore & Ohio R. Co., 7 Cir., 178 F.2d 179, is based upon the peculiar facts of the case. Since the claim was not filed within

the nine months period, there can be no recovery for damage to the contents of cars MDT 21740, IC 54400, IC 50187, and IC 50265.

It remains to consider cars IC 52116 and IC 55485, as to which notice was given by appellant within the required time. The District Court held in effect that appellant had not sustained the burden of proving that the damage to these cars occurred because of the negligence of the railroad.

The District Court found: "The evidence introduced by defendant is not only sufficient to raise an unresolved doubt as to the validity of the inference of negligence arising from the prima facie case made by the plaintiff's proof but it is amply sufficient to persuade that non-existence of negligence in the performance of the duty to afford reasonable protective service of the kind and extent requested by the shipper is as probable as its existence. The plaintiff has not sustained the burden of persuasion which upon the whole evidence remains upon it, where it rested at the start."

This finding, appellant urges, rules that the evidence on both sides is in equilibrium, and demonstrates that the appellee did not sustain its burden.

Appellant contends that its evidence raised a presumption of negligent handling by appellee, which was not rebutted, and that judgment in its favor was required. Pointing out that the common carrier is an insurer of goods in interstate transportation, appellant claims that when it proved that the goods left Paducah in good condition and arrived at destination damaged, it made out a prima facie case and that appellee had the burden of affirmatively showing the actual existence of one of the excepted causes of damage, act of God, public enemy, the inherent nature of the merchandise, or the fault of the shipper. Appellee, it says, is not a mere bailee, but a special type of bailee which has assumed the obligation of an insurer. Cf. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 109, 62 S.Ct. 156, 86 L.Ed. 89.

This contention ignores the applicable rules of the Perishable Protective Tariff No. 13, section 1, of the General Rules and Regulations of the Interstate Commerce Commission, which limit the liability of a carrer transporting perishable goods. Atlantic Coast Line Rd. Co. v. Georgia Packing Co., 5 Cir., 164 F.2d 1, 3. Under Rule 130 appellee does not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay in so far as might be accomplished by reasonable protective service of the kind and extent requested by the shipper and performed without negligence. Under Rule 135 it is the duty of the carrier to furnish without negligence reasonable protective service of the kind and extent elected by the shipper. The bill of lading provided that the fruit was to be transported under "shipper's load and count." Under § 101, 49 U.S.C., 49 U.S.C.A. § 101, this provision renders the carrier not liable for damages caused by improper loading, and the shipper has the obligation of seeing that the car is properly loaded and at a proper temperature. South Carolina Asparagus Growers' Ass'n v. Southern Ry. Co., 4 Cir., 46 F.2d 452, 454; Standard Hotel Supply Co., Inc., v. Pennsylvania R. Co., D.C., 65 F.Supp. 439. Appellant elected to be given standard refrigeration, 30% salt and 70% coarse ice; and the record shows that appellee, from the time of shipment to the time of arrival, gave reasonable protective service of the kind and extent requested. The case, therefore, falls squarely within the ambit of Chesapeake & Ohio R. Co. v. A. F. Thompson Mfg. Co., 270 U.S. 416, 46 S.Ct. 318, 320, 70 L.Ed. 659, which also involved a common carrier. There the Supreme Court held that the railroad was subjected to the rule applicable "to all bailees," that evidence of delivery of the shipment to the carrier in good condition makes out a prima facie case of negligence. But in that case, as here, the railroad introduced evidence of the condition of the cars from the time of shipment to the time of arrival which "persuasively tended to exclude the possibility of negligence." Hence the Supreme Court held that that issue could not be decided in favor of the shipper as a matter of law.

Upon this feature the instant case is even stronger than the cited case, for the District Court has correctly found that appellant has not sustained its burden. While the damage to the fruit is not controverted, delivery of the shipments to the appellee in good condition has not been established.

Evidence was given tending to show that the fruit was properly screened and processed, and in good condition when loaded in the refrigerator cars; that the cars were pre-cooled, properly iced, had the correct temperature, and that there was no delay in placing the processed fruit in the cars. Appellant's agents testified that the cans of peaches in every car were braced in order that they might not be toppled over by the movement of the train and lose their lids, and that extra packages of dry ice were placed in each car as an added protection against defrosting.

All of this evidence was general. Specific testimony was not given as to the processing of individual lots or the packing of the individual cars; but it was positively stated by witnesses for appellant that the same methods were applied to all the fruit with minor variations between the berries and the peaches, and to all the cars.

As to car IC 52116, which was loaded with strawberries, dewberries, and 30-pound cans of peaches, appellant proved that when inspected at destination the strawberries and dewberries were firm and in good condition, but all cans of peaches showed substantial discoloration and the stock was soft. Car IC 55845 was loaded with blackberries, dewberries, and cans of peaches. The inspection revealed that the tins of peaches were dented out of round, with most covers missing, and that the peaches were partially discolored. While the dewberries and blackberries in cartons were crushed, the contents of the cups were well frozen and in good condition.

It was affirmatively shown by the appellee that as to all of the cars there was no undue delay or rough handling in transportation; that they were iced in accordance with the requirements of standard refrigeration and of the bills of lading,

and that the cars were standard refrigerator cars of the kind which in 1945, under war regulations, were available for this purpose. Car IC 55845 was in transit a somewhat longer time than the other cars, but it was shown that the bunkers contained ice of the requisite amount to maintain refrigeration at all times during the transportation.

The District Court in effect concluded that the appellant did not establish that the fruit left Paducah in good condition, and this finding is sustained by the evidence. Caldwell, manager of appellant's processing plant where the fruit was frozen, told an employee of the appellee that delay in July was caused by a breakdown in the refrigerating plant. An official report from an inspector of the Food and Drug Administration stated that the manager of appellant's processing plant told him that the plant had not functioned properly since July 12, 1945. The cars in question left Paducah in the middle of July, 1945. While the general statement was made that the doors of the cars were covered with a heavy cloth during the loading and that the loading platform was roofed, it was positively stated by a witness who was frequently present during the period of loading that no canvas tunnel was used to protect processed fruit from the sun on the loading platform, and no canvas covers were used over the doors of the cars in order to maintain the low temperature necessary when perishable goods are packed. In the two cars in question the peaches were discolored but the berries were in good condition. Experts stated that this indicated a defect in the processing or loading. An inspector for the Railroad Perishable Inspection Agency found no evidence of bracing and of containers for dry ice in the 4 cars he inspected, and found covers off. This disinterested testimony is squarely opposed to appellant's evidence that all cars were securely braced and that dry ice was used as an additional security in each of the cars. It was also shown that slip-cover tops of the cans which held the peaches are not airtight, and that when the cars are not properly braced the tops are apt to come off. This

was evidence of improper loading. In the opinion of three experts, two of them disinterested, the loss was due to improper processing of certain fruit before it was frozen. These facts and other details of the evidence compel the conclusion that the District Court correctly found that the appellant did not sustain its burden.

The judgment of the District Court is affirmed.