**ILLINOIS PACKING COMPANY, a corporation, Plaintiff-Appellee,**

v.

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Defendant-Appellant.**

**No. 11579.**

United States Court of Appeals Seventh Circuit.

Sept. 19, 1956.

C. George Niebank, Jr., Floyd J. Stuppi, Marshall E. LeSueur, Chicago, Ill., for defendant-appellant.

Irving T. Zemans, Chicago, Ill., for plaintiff-appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This action was brought to recover damages for breach of a contract of transportation under the Interstate Commerce Act, 49 U.S.C. § 20, Par. 11, 49 U. S.C.A. § 20(11).

The case was tried upon complaint and answer, as amended, and a stipulation of certain facts. The court and a jury also received evidence in regard to other facts. The jury rendered a verdict for the plaintiff upon which the court entered the judgment from which this appeal is taken.

Among the errors assigned by defendant are that the district court erred in denying defendant's motion to direct a verdict in its favor and also erred "in endorsing from the bench a misstatement by plaintiff's counsel that the witness Robert Nelson had testified that car NWX 3196 had carried 'frozen pork' to Norfolk, Virginia, about two weeks before the movement involved in this case".

From the stipulation it appears that plaintiff, in August 1952, shipped a carload of fresh frozen beef ribs from Chicago to Alameda, California, by defendant, a common carrier. The meat moved in car NWX 3196, which was owned by the Northwestern Refrigerator Car Co., and which was chosen for the shipment by plaintiff's agent. Before the car was loaded with the meat, it was precooled by customary procedures until the interior temperature was approximately 23 degrees Fahrenheit. It was loaded during the morning of August 18, 1952, and the meat was then in a good and frozen condition. Thereafter, the car's ice bunkers were replenished to capacity with ice and salt. It was delivered to defendant in the evening of August 19, 1952, and a few hours later commenced its movement to California. On the morning of August 26, 1952, the car was delivered to the Quartermaster's Market Center at Alameda, California. A few hours later it was opened and entered by an inspector for the United States Army, who rejected the shipment because it was in a partially "defrosted" condition. Defendant took possession of the shipment and sold it at the best price obtainable, after plaintiff rejected the shipment for no cause other than its defrosted condition on arrival at its destination. The beef ribs, although defrosted, were free from any element of decay and were fit for human consumption.

There is no dispute, and the evidence shows, that the shipment moved under the provisions of a bill of lading, a freight way bill and perishable protective tariff No. 15. The bill of lading contained plaintiff's instructions for the care and protection of the shipment in transit:

"Initially iced and replenished to capacity, coarse ice 30% salt by City Products Co. for carrier. Re-ice at all regular icing stations to capacity coarse ice 30% salt. Oftener if delayed. Rule 406 at destination.

"Initially iced with 9300 No. ice & 2790 No. salt. Replenished with 6300 No. ice & 1890 No. salt."

On the reverse side of the bill of lading were provisions dealing with the liability of the carrier.[1] Rule No. 130 of the aforesaid tariff reads as follows:

"Condition of Perishable Goods Not Guaranteed by Carriers.

"Carriers furnishing protective service as provided herein do not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay, insofar as may be accomplished by reasonable protective service, of the kind and extent requested by the shipper, performed without negligence."

Rule No. 135 of said tariff reads as follows:

---

1. "Contract Terms and Conditions

"Sec. 1 (a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided.

"(b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by * * * the act or default of the shipper or owner * * *. * * * Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner, or party entitled to make such request or resulting from a defect or vice in the property, or for country damage to cotton, or from riots or strikes."

"Property accepted for shipment under the terms and conditions of this tariff will be received and transported subject to such directions, only, and to such election by the shipper respecting the character and incidents of the protective service as are provided for herein. The duty of the carriers is to furnish without negligence reasonable protective service of the kind and extent so directed or elected by the shipper and carriers are not liable for any loss or damage that may occur because of the acts of the shipper or because the directions of the shipper were incomplete, inadequate or ill-conceived."

Uncontradicted evidence shows that the car in question was constructed in 1928 and that it was unchanged in construction in August 1952. It had 2½ inches of insulation on all sides and the floor and 3 inches thereof on the roof. It was not equipped with fans or side flues.

There was also some evidence introduced by defendant to the effect that a car insulated as was the car in question did not meet certain standards of insulation existing in August 1952 and that the cause of defrosting in this case was due to the fact that the circulation of air between the cargo area and the ice bunker area within the car was inadequate. There was also defendant's evidence that inspection of the car on September 2, 1952 showed that the flooring was decayed along the sides around the inside of the car, from which holes developed in the floor towards the ends of the car. Defendant also introduced evidence that on August 19, 1952 a car inspector made a report that he had found on the car two side sheeting boards broken and that this condition arose because the car had theretofore been sideswiped.

■ Defendant contended in the district court and here that the defrosting of the meat resulted from these claimed inadequacies in the car furnished by plaintiff and that the damage did not re-

sult from any negligence on its part, as charged in the complaint. It points to its records, introduced in evidence, which purport to show that plaintiff's protective instructions to defendant were complied with.

On the other hand there was evidence introduced by plaintiff which to some extent, at least, was in conflict with the aforesaid evidence offered by defendant. The complaint charged that the approximate (*sic*) cause of the damage was defendant's negligence. The answer to that charge was a denial.

1. It is clear that an issue of fact was presented to the jury and that, in view of the conflict in the evidence, the court properly refused to direct a verdict for the defendant.

■ 2. Plaintiff's counsel in his argument to the jury discussed the adequacy of car NWX 3196 to move a shipment of frozen meat from Chicago to California during the summer. He then said, in referring to plaintiff's witness Nelson,

"Nelson, this concededly important witness, again on cross-examination, when he was pressed as to how he knew that this car would do a job, said 'Why, two weeks previously it carried frozen pork—' "

Then the following colloquy occurred:

"Defendant's counsel: I object. He didn't say frozen pork.

"Plaintiff's counsel: He said frozen pork, to Norfolk.

"The Court: That is my memory.

"Plaintiff's counsel: That is exactly what he said. Two weeks before it had carried frozen pork to Norfolk at 25 per cent salt. * * *

"His defense is that this car was inadequately insulated. Let us examine that for a minute."

The evidence in regard to the use of this car in a trip from Chicago to Norfolk, Virginia, on August 1, 1952, was that a "packing-house product" was carried, but "not exactly the same kind of shipment" as that involved in the case

at bar. It is clear that that evidence was offered by plaintiff because it bore on the main issue in this case. Plaintiff's counsel in his argument made a misstatement of a material part of that evidence with a confirmatory expression from the court, and reiterated it twice. This incident might, and undoubtedly did, have some effect upon the jury in a sensitive area of its consideration of a critical issue.

Defendant contends that these proceedings constituted serious error to its prejudice. Plaintiff's counsel responds that "the inaccuracy was unfortunate but not necessarily prejudicial."

These erroneous statements of plaintiff's counsel, buttressed by the court's remark, were not only inaccurate but seriously prejudicial. For that reason we are constrained to reverse the judgment and remand this case for a new trial.

Reversed and remanded.