LARRY'S SANDWICHES, INC., a California corporation, Appellant,

v.

PACIFIC ELECTRIC RAILWAY CO., a California corporation, Appellee.

No. 18265.

United States Court of Appeals Ninth Circuit.

June 3, 1963.

Russell & Schureman, Theodore W. Russell, and Greenberg, Shafton & Bernhard, Los Angeles, Cal., for appellant.

E. D. Yeomans and Walt A. Steiger, Los Angeles, Cal., for appellee.

Before JERTBERG and MERRILL, Circuit Judges, and WEIGEL, District Judge.

MERRILL, Circuit Judge.

Appellant is suing appellee railroad under the Carmack amendment to the Interstate Commerce Act, 49 U.S.C. § 20 (11), to recover for damages to a shipment of frozen sandwiches delivered by appellant to the railroad at Culver City, California, for shipment to Chicago. Upon arrival at Chicago it was discovered that some of the sandwiches were not in a frozen condition. The shipment was rejected by the consignee and returned by the railroad to appellant in California.

This appeal presents the related problems of the nature of the carrier's obligation respecting shipments of frozen food, and the burden of proof as to the cause of damage suffered by such a shipment en route.

The sandwiches were not subject to visual inspection at the time of loading, since they were individually wrapped in foil, sealed and placed in cardboard boxes which in turn were placed in corrugated paper cases and sealed with tape. The lading was not subject to observation en route, since the car was loaded by appellant and the doors were sealed at origin and were not unsealed until arrival at destination.

The bill of lading recited that the shipment was received by the railroad "in apparent good order, except as noted (contents and condition of contents unknown)."

Appellant presented evidence as to the manner in which it had prepared

the sandwiches for shipment, and the manner in which they had been loaded. Unquestionably it made out a sufficient prima facie case that the lading was delivered to the carrier in good order.

The railroad offered evidence as to the car's refrigerating performance (as determined by the record of thermometer readings within the car) to show that the participating carriers had exercised ordinary care and had fully satisfied the requests of the shipper for refrigerated protective service and the protective tariff rules applicable to perishable goods. Further it endeavored to show that there was a reasonable possibility that the shipment was not completely frozen when loaded in Culver City.

The district court found that the railroad had carried out the shipping instructions and complied with all tariff rules, and that appellant had failed to show negligence on the railroad's part.

Appellant asserts that the district court erroneously failed to impose upon the railroad the proper standard of duty and burden of proof. It contends that the railroad should be held liable as insurer unless it met the burden of establishing that the damage had resulted from the condition of the goods at the time of loading.

■ The Carmack amendment has been construed as codifying the common law rule of a carrier's liability. See Secretary of Agriculture v. United States (1956) 350 U.S. 162, 165, n. 9, 76 S.Ct. 244, 100 L.Ed. 173. At common law, a carrier transporting durable goods was

1. "Rule 130

"CONDITION OF PERISHABLE GOODS NOT GUARANTEED BY CARRIERS

"Carriers furnishing protective service as provided herein do not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay insofar as may be accomplished by reasonable protective service, of the kind and extent requested by the shipper, performed without negligence."

"Rule 135

"LIABILITY OF CARRIERS

"Property accepted for shipment under the terms and conditions of this tariff will

under an insurer's obligation and liable for all damage to such goods without proof of negligence, unless it was able affirmatively to show that the damage was occasioned by one of five specific causes: the shipper, acts of God, the public enemy, public authority or the inherent vice or nature of the commodity. See, e. g., Chesapeake & O. R. Co. v. Thompson Mfg. Co. (1926) 270 U.S. 416, 421–422, 46 S.Ct. 318, 70 L.Ed. 659.

■ Thus, at common law "a carrier was not liable for damage occasioned by the inherent vice or nature of the goods in the absence of negligence." United States v. Reading Company (3 Cir. 1961) 289 F.2d 7, 9; See Secretary of Agriculture v. United States, supra.

Where perishable goods are involved the provisions of the Carmack amendment codifying the common law are given force through the Perishable Protective Tariff No. 18 of the General Rules and Regulations of the Interstate Commerce Commission. Rules 130 and 135 of that tariff [1] establish the tests of negligence.

Upon proof of the perishable nature of the goods the carrier is relieved of its insurer's liability, and its duty becomes one "to furnish without negligence reasonable protective service of the kind and extent so directed or elected by the shipper * * *." (Rule 135.)

■ Thus, in the case of perishable goods the burden upon the carrier is not to prove that the damage resulted from the inherent vice of the goods, but to prove its own compliance with the rules of the tariff and the shipper's instruc-

be received and transported subject to such directions, only, and to such election by the shipper respecting the character and incidents of the protective service as are provided for herein. The duty of the carriers is to furnish without negligence reasonable protective service of the kind and extent so directed or elected by the shipper and carriers are not liable for any loss or damage that may occur because of the acts of the shipper or because the directions of the shipper were incomplete, inadequate or ill-conceived."

-tions. See e. g., United States v. Reading Company, supra; Illinois Packing Co. v. Atchison, Topeka & Santa Fe Ry. Co. (7 Cir. 1956) 236 F.2d 908, 909–910; Delphic Frosted Foods Corp. v. Illinois Central R. Co. (6 Cir. 1961) 188 F.2d 343, 346–347.

 Appellant contends that it is error to regard frozen foods as perishable. It asserts that freezing renders food inanimate, and that in a properly refrigerated environment this condition would continue indefinitely.

We cannot agree. The furnishing of an artificial environment does not confer an imperishable status upon that which normally would be recognized as perishable. Rather it is the perishable character of frozen goods which requires that they be protected by an artificial environment. Were appellant's argument to be accepted no commodity ordinarily subject to deterioration could be classified as perishable so long as it was presented to the railroad in a frozen condition. The tariff for perishable goods would be rendered meaningless.[2]

 Appellant asserts error in the failure of the district court explicitly to find as to the condition of the goods on delivery to the railroad. The court found only (in the words of the bill of lading) that the goods were in apparent good order.

We find no prejudicial error in this lack. We assume that appellant had satisfactorily made out a prima facie case of delivery in good order. That case was met by the railroad's proof of the perishable character of the shipment and of its own compliance with the requirements of the tariff and the shipper's instructions. The ultimate burden of persuasion then lay with the shipper to prove, by showing specific acts of negligence, that notwithstanding such apparent compliance, the railroad had failed to use due care. Appellant, by never ad-

vancing beyond its prima face case, did not meet that burden in this case. It thus failed to overcome the railroad's proof, persuasively tending to exclude the possibility of negligence. See Chesapeake & O. R. Co. v. Thompson Mfg. Co., supra, 270 U.S. 416, 423, 46 S.Ct. 318, 70 L.Ed. 659.

Affirmed.

---

2. Other courts faced with this problem have classified frozen foods as perishable. See, e. g., Delphic Frosted Foods Corp. v. Illinois Central R. Co., supra (frozen fruit); Illinois Packing Co. v. Atchison, Topeka & Santa Fe Ry. Co., supra (frozen beefribs).