(573 P.2d 632)
No. 48,954

Chester A. Gay, d/b/a Gay Construction, *Appellee,* v. Graves Truck Line, Inc., *Appellant.*

Opinion filed December 9, 1977.

*John W. Mize,* of Clark, Mize & Linville, Chartered, of Salina, for the appellant.
*Robert S. Jones,* of Norton, Wasserman & Jones, of Salina, for the appellee.

Before Harman, C.J., Abbott and Spencer, JJ.

Harman, C.J.: This is an action by a consignee to recover for damages done to merchandise carried by defendant as a common carrier in interstate commerce. Trial to the court resulted in judgment for the plaintiff. Two separate shipments were the subject of trial but appeal has been taken by defendant only with respect to one, the Windsor door shipment, for which judgment for $557.41 was entered. The issue is whether a sufficient written claim was timely filed.

The Windsor shipment originated in Little Rock, Arkansas, and on October 14, 1974, defendant Graves Truck Line, Inc. delivered it to plaintiff Chester A. Gay at Abilene, Kansas. Noting damage to some of the doors, plaintiff, who was a general contractor, notified defendant and on October 16, 1974 requested an inspection. The inspection was made by defendant's agent on October 23, 1974. The agent filled out an "After Delivery Inspection Report." He also partially filled out a form denominated "Freight Claim For Loss and Damage." The agent dated the

claim October 23, 1974, and filled out Section I of the claim form which called for the name and address of the claimant, the shipper and the consignee, and for the number and date of defendant's freight bill. He partially filled out Section III of the claim entitled "Inspection report of damage on loss of merchandise from container" by indicating October 14, 1974, as the date of delivery, and by striking out certain items which called for answers respecting concealed damage, apparent damage, description and adequacy of packing, whether damage was noted on delivery, whether there was loss or pilferage, and whether shipment was in original manufacturer's carton and packing.

Defendant's inspection agent did not fill out Section II of the claim form entitled "Statement of how amount is determined, description of merchandise, value, etc." He also left blank the space which called for the dollar amount of the claim. This portion of the claim also stated that certain documents must be included with the claim, including "[a]ll repair or replacement bills in support of claimed amount." The agent stated that plaintiff had to have the replacement bills. Plaintiff did not at that time sign the partially completed claim form and defendant's agent left it with plaintiff for completion of Section II.

The "After Delivery Inspection Report" was filled out by the agent, apparently on October 23, 1974. It indicated that damage to the shipment was both visible and concealed; that damage could be known without unpacking; and it identified nineteen door sections which were damaged. Some of the damage was characterized as "concealed." The testimony revealed that the door sections were to be installed by plaintiff in an implement company building in Abilene. At the time of defendant's inspection, some of the shipping cartons containing the doors were torn so that the damage was visible. Some of the damaged sections were, with the owner's consent, repaired. Four sections were damaged so that they had to be replaced. Plaintiff ordered replacement doors with Windsor Door Company at Little Rock on November 4, 1974, requesting delivery as soon as possible. These doors were not stock items but had to be fabricated to the job specifications and the Windsor company could not and would not state their cost until the doors were completed. Plaintiff sent a follow-up order to Windsor on December 2, 1974, and was advised the doors would be shipped December 13th or 16th.

When plaintiff did not receive them as indicated, he wrote a follow-up letter January 7, 1975, requesting information and an invoice so the freight claim could be processed. June 9, 1975, plaintiff wrote Windsor again on the same subject.

The date the replacement doors or the invoice for them actually arrived in Abilene is not clear but it appears to be about July 14, 1975. Meanwhile Windsor issued an invoice for the doors dated July 10, 1975, showing a shipping date of July 8, 1975, and a cost of $496.78. On August 14, 1975, ten months after delivery of the first shipment, defendant's claim department received the written claim form signed by plaintiff. Section II was completed. It indicated replacement cost consisting of Windsor's invoice in the sum of $496.78, plus defendant's freight charge of $28.63, and repair cost in the amount of $32.00, or a total claim of $557.41.

Section 2(b) of the uniform straight bill of lading under which the doors were shipped provides that as a condition precedent to recovery, all claims for freight damage must be filed in writing with the delivering carrier within nine months of the date of delivery. Defendant asserts the judgment cannot stand because plaintiff failed to comply with this contractual provision.

The parties agree, and properly so, that federal law governs transactions involving the interstate shipment of goods (*Nichols v. Atchison, T.& S. F. Rly. Co.*, 180 Kan. 101, 299 P.2d 52). A leading case on the subject of freight claims is *St. Louis, I. Mt. & So. Ry. Co. v. Starbird*, 243 U.S. 592, 61 L.Ed. 917, 37 S.Ct. 462 (1917), from which these principles have emerged: Actual notice of damage on the part of a carrier is insufficient to constitute a claim; no particular form of written claim is necessary and the claim need not set out all the particulars of the damage; and the written claim puts in permanent evidentiary form the intent to claim damages and facilitates prompt investigation by the carrier.

Federal decisions have generally been liberal in construing the sufficiency and timeliness of shippers' written claims. For example, in *American Synthetic Rubber Corp. v. Louisville & N. R. Co.*, 422 F.2d 462 (6th Cir. 1970), defendant's agents examined and returned to plaintiffs documents which stated that damage was being claimed though the extent of damage to the shipment had not been ascertained; more than nine months later plaintiffs submitted to the defendant carrier a memorandum outlining the extent of damage. It was held this action sufficiently complied

with section 2(b). In *Loveless v. Universal Carloading & Distributing Co.*, 225 F.2d 637 (10th Cir. 1955), a statement on a freight bill that damage to a shipment was noted on arrival was deemed sufficient. In *Thompson v. James G. McCarrick Co.*, 205 F.2d 897 (5th Cir. 1953), memoranda noted on papers entitled "Statement of Protest" and "Placement Notice" which identified shipments as decayed and delayed, and which indicated claim "For $150.00 More or Less" and for "$100.00 subject to correction," were held sufficient.

Defendant urges that holdings of this nature are to be tempered by the later enactment by the Interstate Commerce Commission in 1972 of the following regulation:

"(a) *Claims in writing required.* A claim for loss or damage to baggage or for loss, damage, injury, or delay to cargo, shall not be voluntarily paid by a carrier unless filed in writing, as provided in paragraph (b) of this section, with the receiving or delivering carrier, or carrier issuing the bill of lading, receipt, ticket, or baggage check, or carrier on whose line the alleged loss, damage, injury, or delay occurred, within the specified time limits applicable thereto and as otherwise may be required by law, the terms of the bill of lading or other contract of carriage, and all tariff provisions applicable thereto.

"(b) *Minimum filing requirements.* A communication in writing from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation, and (1) containing facts sufficient to identify the baggage or shipment (or shipments) of property involved, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

"(c) *Documents not constituting claims.* Bad order reports, appraisal reports of damage, notations of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carriers or their inspection agencies, whether the extent of loss or damage is indicated in dollars and cents or otherwise, shall, standing alone, not be considered by carriers as sufficient to comply with the minimum claim filing requirements specified in paragraph (b) of this section." (49 CFR 1005.2)

Regulations of the Interstate Commerce Commission do have the force and effect of federal law. Thus, an inspection report, standing alone, may not be considered sufficient compliance with minimum claim filing requirements. But that report here did not stand alone. The October 23, 1974, claim for freight damage form, made the same day as the inspection report, did identify the property by means of the freight bill covering it (which bill in turn described the shipment), and it indicated claim for damage

was being made. Defendant's agent had this form on October 23, having filled out those parts already indicated. Keeping in mind the purpose of the requirement for a written claim, we think these documents, taken together, sufficiently made claim for a *determinable* amount of money within the meaning of the regulation. The term "determinable" simply means capable of being definitely ascertained, which is manifestly something different from a "specified" amount.

As matters developed, final determination of that specified amount was not quickly obtainable, despite plaintiff's diligent efforts. Shortly after October 23, 1974, plaintiff ordered the replacement doors and tried to secure a written replacement bill. He made repeated efforts toward this end but because the doors had to be fabricated specially, he could not secure a statement of their cost until after they were completed. He did not receive this until about July 14, 1975. Within thirty days thereafter his written claim and manufacturer's invoice for the exact amount was received by defendant. It is difficult to perceive much more plaintiff could have done under all the circumstances. We think his actions were reasonable and that the October 23 writings sufficiently advised defendant of his claim so that it could make its own investigation of the matter. The trial court found plaintiff had substantially complied with filing requirements and the record sufficiently supports that finding.

The judgment is affirmed.