WISCONSIN PACKING CO., INC., a
Wisconsin Corporation,
Plaintiff-Appellant,

v.

INDIANA REFRIGERATOR LINES,
INC., an Indiana Corporation,
Defendant-Appellee.

No. 78–2305.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1979.

Decided Aug. 10, 1979.

Rehearing En Banc Granted
Nov. 1, 1979.

John P. Brady, Milwaukee, Wis., for plaintiff-appellant.

H. Barney Firestone, Chicago, Ill., for defendant-appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and BONSAL, Senior District Judge.*

BONSAL, Senior District Judge.

Wisconsin Packing Co. ("Wisconsin Packing"), plaintiff-appellant, appeals from an order of the district court granting defendant-appellee, Indiana Refrigerator Lines' ("IRL"), motion for summary judgment.

On July 29, 1974, a shipment of 32,340 pounds of frozen meat was tendered by Wisconsin Packing to IRL for shipment from Milwaukee to the Naval Supply Center in Norfolk, Virginia. On July 31, 1974, the Navy rejected the shipment claiming that the temperature of the meat was 1.2 degrees Fahrenheit over the acceptable tolerance standard set forth in the handbook of military regulations. IRL returned the

---

* Senior District Judge Dudley B. Bonsal of the Southern District of New York is sitting by designation.

shipment to Wisconsin Packing in Milwaukee, which refused to accept it. On August 2, 1974, Mr. Karl Brown, an officer of Wisconsin Packing, wrote Mr. James Stevenson, Milwaukee Terminal Manager for IRL, as follows:

"Wisconsin Packing Company refuses to accept meat on trailer no. 4013 because of Army rejection of temperatures averaging 1.2 degrees over acceptable allowance temperatures. Return temperatures checked out and ranged from nine to twenty-five degrees."

Wisconsin Packing eventually disposed of the shipment.

On July 20, 1976, Wisconsin Packing brought this action against IRL pursuant to the Interstate Commerce Act, 49 U.S.C. § 20(11) claiming damages in the amount of $13,192.66.

On September 5, 1978, the district court granted IRL's motion for summary judgment on the grounds (1) that Wisconsin Packing failed to give IRL sufficient written notice of its claim within nine months of the occurrence of the damage as required by the Uniform Bill of Lading and the Interstate Commerce Act and regulations issued thereunder; and (2) that IRL was not chargeable with actual knowledge of all the conditions as to the alleged damages that a written notice would have provided and which would have excused the lack of formal notice under *Hopper Paper Co. v. Baltimore & O. Ry.*, 178 F.2d 179 (7th Cir. 1949), *cert. denied*, 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359 (1950).

With respect to the first ground, the district court held that the August 2, 1974 letter, the only written communication made by Wisconsin Packing within the nine-month period, and the invoices held by IRL indicating that the shipment had been rejected did not constitute sufficient written notice of claim because they did not identify the shipment with sufficient specificity nor state that IRL was liable for damages nor the specific amount of damages that would be claimed. In its appeal, Wisconsin Packing contends that the district court erred in determining that Wisconsin Packing had not provided IRL with

sufficient written notice of its claim of damage. Moreover, Wisconsin Packing contends that written notice was not necessary since IRL had actual knowledge of Wisconsin Packing's claim (*Hopper, supra*) and that disputed issues of fact as to the applicability of *Hopper* precluded the granting of summary judgment.

We agree with the district court that the letter of August 2, 1974 from Wisconsin Packing and the invoices did not constitute a sufficient written notice of claim within the meaning of the Interstate Commerce Act and regulations thereunder. The shipment was evidenced by a Uniform Bill of Lading which provided that Wisconsin Packing was obligated to give IRL written notice of claim for loss or damage no later than nine months after the damage allegedly occurred. The regulations promulgated by the Interstate Commerce Commission, 49 C.F.R. § 1005, 37 Fed.Reg. 4258 (1972), provide in part that any notice of claim for loss or damage shall be in writing, contain facts sufficient to identify the shipment involved, assert liability for alleged loss or damage, and make claim for the payment of a specified or determinable amount of money. 49 C.F.R. § 1005.2(b). Moreover, 49 C.F.R. § 1005.2(c) provides:

"(c). *Documents not constituting claims.* Bad order reports, appraisal reports of damage, notations of shortages or damage, or both, on freight bills, delivery receipts, or other documents . . . shall standing alone not be considered by carriers as sufficient to comply with the minimum claim filing requirements specified in paragraph (b) of this section.

Although the Interstate Commerce Commission states that such regulations "shall govern the processing of claims for loss, damage, injury or delay to property . . . in interstate or foreign commerce . . . subject to the Interstate Commerce Act," (49 C.F.R. § 1005.1), they provide the Court with a useful guide as to what should constitute a sufficient notice of claim. 49 C.F.R. § 1005.2(b). *See Henry Pratt Co. v. Stor Dor Freight Systems, Inc.*, 416 F.Supp. 714 (N.D.Ill.1975). We agree with the district court that the letter of August 2, 1974

and the invoices did not meet the requirements of the Interstate Commerce Act and regulations promulgated thereunder.

■ Since the purpose of the written notice is to alert the carrier of the damage and allow it an opportunity to make a full investigation (*Georgia, Florida & Alabama Railway v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916)), we held in *Hopper*, which was decided before the relevant regulations were promulgated, that despite the need for a written claim as required by the Uniform Bill of Lading and the Interstate Commerce Act, a failure to give the statutory notice of a claim for damage is excused "where the carrier has or is chargeable with actual knowledge of all the conditions as to the damages that a written notice could give." 178 F.2d at 181. *Accord, MGD Graphic Systems Americas Co. v. Acme Fast Freight, Inc.*, 437 F.Supp. 10 (N.D.Ill.1977); and *Stearns-Roger Corp. v. Norfolk & Western Railway*, 356 F.Supp. 1238 (N.D.Ill.1973). In *Hopper*, we held that the carrier had actual knowledge of the facts which a written notice would have provided. There the shipment of paper was destroyed in a collision between two trains of the defendant carrier which then gave notification of the loss to both the consignor and consignee. We upheld the district court's finding that:

> "[d]efendant knew that it had destroyed such paper and had at least as much if not more knowledge in relation to the damage in question as plaintiff." 178 F.2d at 181.

■ The only document submitted by Wisconsin Packing to IRL within the nine-month period was the letter of August 2, 1974. Although there was a dispute as to whether an agent of Wisconsin Packing told IRL on August 2, 1974 that Wisconsin Packing would be seeking reimbursement for its losses, the district court assumed this to be true for the purposes of the summary judg-

ment motion. Under these circumstances, IRL merely had knowledge of the fact of damage, while in *Hopper* the defendant had full knowledge of all the conditions of the damage. Accordingly, summary judgment was properly granted to IRL.[1]

AFFIRMED.

CUMMINGS, Circuit Judge, dissenting.

As noted in the majority opinion, plaintiff shipper sued defendant motor carrier for $13,192.66 damages caused by defendant's delivery of 32,340 pounds of frozen meat in Norfolk, Virginia, "in a damaged condition unsuitable for human consumption or for purchaser's use."[1] The suit was brought under Section 20(11) of the Interstate Commerce Act (49 U.S.C. § 20(11)), known as the Carmack Amendment, making carriers liable for damage to shippers' property despite any attempted exemption from liability by the carrier.

The statute does not require shippers to file their claim in writing. The bill of lading, however, requires written notice of claims to be sent to the carrier within nine months of the loss. The Supreme Court has held that such a requirement in a bill of lading is enforceable, but that no special form is required. Informal notice is adequate as long as it affords the carrier an opportunity to investigate the circumstances of the loss. *Georgia, Florida & Alabama Railway Company v. Blish Milling Company*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948, *St. Louis, Iron Mountain and Southern Railway Company v. Starbird*, 243 U.S. 592, 37 U.S. 462, 61 L.Ed. 917. Additionally, this Court held in *Hopper Paper Co. v. Baltimore & Ohio R. Co.*, 178 F.2d 179 (7th Cir. 1949), certiorari denied, 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359, that actual notice of the loss is adequate, even though the shipper apparently sent no writing at all to the carrier within the specified time.[2] A

---

1. Insofar as this opinion may disagree with *Hopper Paper Co. v. Baltimore & O. Ry.*, 178 F.2d 179 (7th Cir. 1949), it has been circulated among all judges of this court in regular active service. A majority did not favor a rehearing in banc on that question.

1. Par. 7 of amended complaint.

2. The result in *Hopper* was approved in *Perini-North River Associates v. Chesapeake & Ohio Railway Co.*, 562 F.2d 269 (3d Cir. 1977), where the court held that the carrier was estopped to raise the lack of written notice as a defense.

number of the cases cited by the defendant in fact support the proposition that the form of the written notice is irrelevant and that the carrier's opportunity to inspect the damaged goods is the key factor. In *Miller v. Aaacon Auto Transport*, 447 F.Supp. 1201 (S.D.Fla.1978), for example, the court held that informal letters from the shipper to the carrier were sufficient notice. It concluded:

> "The purpose of the written claim requirement is not to avoid the payment of just claims, but to facilitate the prompt investigation of claims and insure equality of treatment among shippers.
>
> \*   \*   \*   \*   \*   \*
>
> "[T]he requirement is satisfied if the written instruments supply 'sufficient information upon which a prompt and complete investigation may be based.'" 447 F.Supp. at 1204 (citations omitted).

Accord, *Thompson v. James G. McCarrick Co., Inc.*, 205 F.2d 897 (5th Cir. 1953); *Loveless v. Universal Carloading & Distributing Company, Inc.*, 225 F.2d 637 (10th Cir. 1955); *Rollei of America, Inc., v. T. I. M. E.—D. C., Inc.*, 140 N.J.Super. 560, 357 A.2d 33 (1976).[3] It has also been noted that where an employee of the carrier actually investigates the loss, it is much easier to infer that an informal writing was sufficient notice. *Atchison, Topeka and Santa Fe Railway Co. v. Littleton Leasing and Investment Company, Inc.*, 582 F.2d 1237, 1241 (10th Cir. 1978).

Similarly, in *Gay v. Graves Trucking Line, Inc.*, 1 Kan.App.2d 704, 573 P.2d 632, 634 (1977), the court noted that federal decisions have been liberal in construing the sufficiency and timeliness of shippers' written claims and that no particular form of written claim is necessary, nor need the claim set out all the particulars of the damage. Consequently, the court held that the requirements of the uniform bill of lading and the Interstate Commerce Commission regulations (discussed *infra*) were satisfied by an inspector's report and a claim for freight damage form that did not state any amount of claim despite the requirement of the regulation that the written notice specify the amount of money claimed (49 C.F.R. § 1005.2(b)).

In the present case, the carrier knew of the loss and actually had the goods inspected. It was orally informed of the shipper's intention to file a claim and was again informed of the claim by letter, all within a few days of the loss. The letter was intended to memorialize the position of the shipper that the carrier would be held responsible for the loss. It had asserted this position orally at the time the carrier's representatives inspected the rejected shipment. The majority concludes that because this letter did not comply with the form of notice required by certain Interstate Commerce Commission regulations, the claim must fail. However, those regulations do not require the result reached by the majority, which is in conflict with the previously cited cases holding that notice is adequate if as a practical matter it allows the carrier to identify and inspect the disputed shipment.

The regulations were promulgated in 1972 in an attempt by the Interstate Commerce Commission to prevent carriers from discriminating among customers by settling spurious or frivolous claims in their favor. See *Ex Parte No. 263*, 340 I.C.C. 515, 524, 529, 530, 544, 547–548, 553, 605–606. The regulations are appended to *Ex Parte No. 263* and provide in pertinent part that "*A claim for \* \* \* damage to \* \* cargo shall not be voluntarily paid* by a carrier unless filed in writing \* \* \*

---

**3.** Cases cited by the defendant which have held that lack of notice absolved the carrier generally involved situations in which apparently no written notice or actual notice of a claim was received within the required time. *Atchison, Topeka and Santa Fe Railway Co. v. Littleton Leasing and Investment Company, Inc.*, 582 F.2d 1237 (10th Cir. 1978); *Henry Pratt Company v. Stor Dor Freight Systems, Inc.*, 416 F.Supp. 714 (N.D.Ill.1975); *Delphi Frosted Foods Corp. v. Illinois Central Railroad Co.*, 188 F.2d 343 (6th Cir. 1951). Another case refused to allow the shipper's claim even though the carrier had actual notice, because no written claim in any form was filed within the requisite time. Since there was at least informal written notice here, even that case is distinguishable. *Johnson & Dealaman, Inc. v. William F. Hegarty, Inc.*, 93 N.J.Super. 14, 224 A.2d 510 (1966).

with the receiving or delivering carrier * * * within the specified time limits * * * required by law, [or by] the terms of the bill of lading * * *." (Emphasis supplied.) 49 C.F.R. § 1005.-2(a), reproduced in 340 I.C.C. at 718. The present bill of lading specified that the shipper's written claim must be filed within nine months of the alleged damage, the shortest period permitted by the Carmack Amendment. The regulations further govern the form of the notice, requiring it to identify the shipment specifically, to state specifically that the carrier would be held liable for damages and to claim a specific amount of damages (49 C.F.R. § 1005.2(b)).

The majority opinion has construed these regulations as if they imposed substantive limits on damage claims and therefore foreclosed this shipper's claim even though the record shows that the carrier had actual knowledge of all the necessary facts within nine months of the damage. However, as the Commission's report accompanying the regulations makes clear, they do not control the form that notice must take to be effective in a contested case such as this. The Commission's intent was to make claims settlement more expeditious by providing procedures for the voluntary disposition of claims by carriers. Simultaneously, the regulations were intended to guard against the potential for abuse in the claims settlement process by providing that no voluntary settlements could be made unless the rather rigid written notice requirements were met. As the Commission's report clearly contemplated, the penalty for failure to comply with the notice required by the regulations is that the claimant must take the time-consuming and expensive route of litigating his claim in the district court rather than utilizing the settlement procedures authorized by the regulations. See 340 I.C.C. at 614. The Commission did not intend to erect a substantive barrier to claims recovery and acknowledged that in

any event it did not have authority to do so. 340 I.C.C. at 542. Therefore, as in *Hopper Paper Co. v. Baltimore & Ohio R. Co., supra,* certiorari denied, 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359, in a contested case failure to give formal written notice of a claim for damages within the nine months provided in the bill of lading does not control the outcome in the district court. Such lack of formal written notice "is excused, or is inapplicable where [as here] the carrier has or is chargeable with actual knowledge of all the conditions as to the damages that a [formal] written notice [would] give." 178 F.2d at 181–182. This Court noted that the purpose of requiring the filing of a claim "is not to escape liability, but to facilitate prompt investigation * * * [and] is addressed to a practical exigency and * * to be construed in a practical way."[4] Accordingly, in *Hopper Paper Co.,* we held as follows (at page 182):

"In the instant case it is undisputed that defendant and its agents were fully aware and cognizant of the existence of all the facts concerning the wreck and destruction of the carload of paper. In such a situation a formal notice by plaintiff to the defendant could not have accomplished anything more. Hence, we conclude that the carrier may not use the provisions of the bill of lading [requiring written notice to the carrier within nine months after delivery of the damaged property] to shield itself from the liability imposed upon it by the statute and the common law for its negligent destruction of the shipper's property. To hold otherwise would not be construing the bill of lading 'in a practical way.'"

As the *Hopper* Court observed, permitting the carrier's knowledge to substitute for a written notice is not discriminatory nor a preference and therefore the carrier was not permitted to escape liability on the technicality imposed by the present majority opinion.[5]

4. The quotation was taken from *Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.,* 241 U.S. 190, 196, 198, 36 S.Ct. 541, 544–45, 60 L.Ed. 948.

5. *Hopper* was consistent with and cited *Lehigh Valley R. Co. v. State of Russia,* 21 F.2d 396 (2d

Cir. 1927), certiorari denied, 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432; and was discussed with approval in *Loveless v. Universal Carloading & Distributing Co., Inc.,* 225 F.2d 637 (10th Cir. 1955); and was followed in *Delaware, L & W R. Co. v. United States,* 123 F.Supp. 579 (S.D.N.Y.1954); *Stearns-Rogers Corporation v.*

In my judgment, the shipper's letter of August 2, 1974, to the carrier, together with written documents in the carrier's file identifying the shipment, quantity of goods shipped, the extent and cause of damage, plus the surrounding circumstances disclosed in the record, gave the carrier "actual knowledge of all the conditions as to the damages that a written notice would give." *Hopper Paper Co., supra,* 178 F.2d at 181.[6] Thus the carrier's delivery receipt (Memo 59515) shows that the goods were received from the shipper on July 29, 1974, and were to be maintained by carrier at zero temperature en route to the Naval Supply Center in Norfolk, Virginia, where they were to be delivered on July 31, 1974. The shipper's delivery receipt (Memo 59557) shows that the Naval Supply Center refused delivery because the temperature was too high (1.2 degrees over tolerances), so that all the meat was to be returned to the shipper. The record also shows that the meat was exclusively in the carrier's possession from its shipment from Butler, Wisconsin, to Norfolk, Virginia, and back. One of the carrier's representatives was present when the seal was broken and the trailer was opened in Norfolk, Virginia, on July 31, 1974, and when the tests were made which determined that the meat was not within acceptable military standards so that it was rejected. Thereupon the carrier gave the shipper its first notification of the loss and had the refrigeration unit on the trailer checked in Pittsburgh, Pennsylvania, on the return trip from Norfolk, Virginia. A carrier representative was also present at the shipper's premises when the meat was returned there on August 2, 1974, and remained there while military personnel tested the meat and found that it was still 1.2 degrees over the required tolerances. The carrier's tender of the returned meat was then refused by the shipper. At the same time, the carrier representative checked the refrigeration on the trailer, was told that the shipper would look to the carrier for reimbursement, and afterwards tested the refrigeration unit for an additional period of three days on the carrier's premises. On August 5, 1974, the carrier's Milwaukee terminal manager advised the shipper he had been unable to dispose of the meat and had the shipper take back the meat to dispose of on the carrier's behalf.[7] Thus within a few days of the damage the carrier had all the necessary information it needed to defend against the shipper's claim, including an informal writing from the shipper, and was certainly enabled "to facilitate prompt investigation" (*Blish Milling Co., supra,* 241 U.S. at 196, 36 S.Ct. 541).

The bill of lading merely required written claims of damage without any further specificity (Supp.App.112). Since the carrier had knowledge of the fact of the damage, the extent of the damage and the reasons for the rejection by the consignee, a more complete written notice than was contained in the August 2, 1974, letter to the shipper was unnecessary.[8] The informal written notice contained in the Shipper's August 2 letter fulfilled the bare requirement of the bill of lading that written notice be sent within nine months of the loss. The carrier had both informal written notice and actual notice which was similar to the actual no-

---

*Norfolk and Western Railway Co.,* 356 F.Supp. 1238 (N.D.Ill.1973); *MGD Graphics Systems Americas Co. v. Acme Fast Freight, Inc.,* 437 F.Supp. 10 (N.D.Ill.1977). Summary judgment was later entered for the carrier in *MGD Graphics* only because its subsequent affidavit showed the carrier had no knowledge of the extent of the shipper's loss. Here Indiana Refrigerator had tried unsuccessfully to sell the damaged meat and therefore knew how drastically it was damaged and the outer limits of its liability.

6. Cases not applying *Hopper* to their facts have not questioned its applicability to circumstanc-

es like these. See *East Texas Motor Freight Lines v. United States,* 239 F.2d 417, 420 n.10 (5th Cir. 1957).

7. The facts described throughout this dissent are plaintiff's version of events. For the purposes of determining the propriety of summary judgment for the defendant, we must of course assume that plaintiff could prove its assertions.

8. 49 C.F.R. § 1005.2(c), *supra,* on which the majority relies, is inapplicable because that entire regulation is geared to claims being voluntarily paid by a carrier. See 49 C.F.R. § 1005.-2(a), *supra.*

tice held adequate in *Hopper.* Since the regulations requiring a specific form of notice are applicable only to voluntary settlements, they do not change the precedential value of *Hopper* and the previously cited cases authorizing informal notice. In these circumstances, summary judgment for the carrier gave it an improper windfall. Accordingly, the cause should be remanded for a new trial.

### ORDER

On consideration of the petition for rehearing and suggestion for rehearing *en banc* filed in the above-entitled cause by plaintiff-appellant Wisconsin Packing Co., Inc., a vote of the active members of the Court was requested, and a majority of the active members of the Court have voted to grant a rehearing *en banc* although a majority of the judges on the original panel had voted to deny a panel rehearing. Accordingly,

IT IS ORDERED that the case be reheard *en banc.*