**CALPRO COMPANY, Plaintiff,**

v.

**CONSOLIDATED ENGINEERING COMPANY OF GEORGIA, INC.; Fabtex Systems, Inc.; Textile Welding, Inc.; Ray Paul Enterprises, Inc.; and Superior Trucking Company, Inc., Defendants.**

Civ. A. No. C80–1098A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 16, 1980.

Allen S. C. Willingham, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for plaintiff.

C. James Jessee, Jr. and Jeffrey L. Sakas, Jessee, Ritchie & Duncan, Atlanta, Ga., for Consolidated Engineering Co. of Ga., Inc.

James T. Fordham and John P. Neal, Dalton, Ga., for defendants Fabtex Systems, Inc. and Textile Welding, Inc.

Glen Frick, Lokey & Bowden, Atlanta, Ga., for defendant Ray Paul Enterprises, Inc.

Paul M. Talmadge, Jr., and Stephen E. O'Day, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for defendant Superior Trucking Co., Inc.

## ORDER

SHOOB, District Judge.

This case, which was removed from the Superior Court of Fulton County, has been submitted to this Court for its consideration of three motions: (1) defendant Ray Paul Enterprises, Inc.'s motion to strike portions of the complaint, (2) a motion for substitution of counsel, and (3) defendant Superior Trucking Company, Inc.'s motion for summary judgment. The first motion was apparently filed in state court. While some of the briefs for and against Ray Paul Enterprises' motion are in the file before this Court, the motion itself and the brief in support have *not* been made part of the record.[1] Thus, the first motion is not properly before this Court. Defendant Ray Paul and all other parties to this removed action should see that the record here in federal court is complete. This Court will rule on defendant Ray Paul Enterprises, Inc.'s motion to strike when it has been properly presented.

Counsel of record for defendant Consolidated Engineering Company of Georgia, Inc., Mr. John L. Respess, Jr. has moved the Court for leave to withdraw and to be replaced as counsel of record by Mr. C. James Jessee, Jr. and Mr. Jeffrey L. Sakas of the firm of Jessee, Ritchie & Duncan, P. C. There is no opposition to the motion and accordingly, it is GRANTED. Local Court Rule 91.2.

---

1. The only documents from state court which were attached to the petition for removal, and thus made a part of the record in federal court, were the Notice of Filing of Petition and Bond for Removal, the Removal Bond, the summons on Superior, and the original complaint and its four exhibits.

Plaintiff Calpro Company was consignee of an annealing oven shipped by defendant Superior Trucking Company, Inc. ("Superior"), an interstate carrier. Defendant Textile Industrial Welding, Inc., was the shipper of the oven. Defendant Superior has moved for summary judgment in its favor on the ground that the failure of plaintiff Calpro, cross–claimant Textile Industrial Welding, Inc., or cross–claimant Ray Paul Enterprises, Inc. to file a written claim within nine months as required by the Bill of Lading and Tariff applicable to the shipment, and as required by 49 C.F.R. § 1005.2, precludes recovery from Superior.

Superior has supported its motion with true and correct copies of the Bill of Lading between Superior and the shipper, and the Tariff applicable to the shipment, and with affidavits of Superior personnel that no written claim for damages was made on Superior from the date of the shipment (October, 1978) until the filing of this lawsuit (filed May 23, 1980, in the Superior Court of Fulton County).

The Bill of Lading between Superior and the shipper incorporates by its terms the Uniform Straight Bill of Lading, Tariff 200–0, MF–ICC 168. The Uniform Straight Bill of Lading contains the following provision:

BILLS OF LADING–STRAIGHT BILL, CONTRACT TERMS AND CONDITIONS

All shipments are subject to the following contract terms and conditions as provided in Item 360:

*Contract Terms and Conditions:*

Section 2:

(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after a delivery of property (or, in the case of export traffic, within nine months after delivery at port of export), or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed, and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

In addition, pursuant to the Interstate Commerce Act, in particular 49 U.S.C. § 11707(e), previously 49 U.S.C. § 20, par. (11), the Interstate Commerce Commission has issued regulations which "govern the processing of claims for loss, damage, injury, or delay to property transported or accepted for transportation, in interstate or foreign commerce," by each carrier subject to the Interstate Commerce Act. In pertinent part, these regulations provide as follows.

(a) *Claims in writing required.* A claim for loss or damage to baggage or for loss, damage, injury or delay to cargo, shall not be voluntarily paid by a carrier unless filed in writing, as provided in paragraph (b) of this section, with the receiving or delivering carrier, or carrier issuing the bill of lading, receipt, ticket, or baggage check, or carrier on whose line the alleged loss, damage, injury, or delay occurred, within the specified time limits applicable thereto and as otherwise may be required by law, the terms of the bill of lading or other contract of carriage, and all tariff provisions applicable thereto.

(b) *Minimum filing requirements.* A communication in writing from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property involved, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for

the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

(c) *Documents not constituting claims.* Bad order reports, appraisal reports of damage, notations of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carriers or their inspection agencies, whether the extent of loss or damage is indicated in dollars and cents or otherwise, shall, standing alone, not be considered by carriers as sufficient to comply with the minimum claim filing requirements specified in paragraph (b) of this section.

49 C.F.R. § 1005.2, Filing of claims, issued March 1, 1972, 37 F.R. 4258. Superior argues that the failure of plaintiff Calpro and cross–claimant shipper to file any written claim for more than 18 months after delivery precludes any recovery.

Cross–claimant/shipper Textile Industrial Welding, Inc., and cross–claimant Ray Paul Enterprises, Inc., have failed to respond to Superior's motion for summary judgment. See Local Court Rule 91.2. However, plaintiff Calpro does oppose the motion. While not contesting the material facts as set out by Superior, Calpro has provided the Court with a statement of additional material facts and disputed material facts, which, Calpro contends, preclude summary judgment. See Local Court Rule 91.72. These facts contended by Calpro are as follows:

1.

When the oven was delivered to Calpro in California, it was noted to be in a damaged condition. [Affidavit of Amaral, ¶ 3]. At the time of delivery, an employee of Calpro indicated in writing above his signature on the shipping receipt that the oven was "Received Damaged". [Affidavit of Amaral, ¶ 4; Affidavit of Willingham, Exhibit "A"]. Superior's employee who delivered the oven to Calpro received this written notice of Calpro's complaint and other oral communications of Calpro's complaint at that time.

2.

During the period of time following shipment, Mr. Joe Amaral, who was a purchasing agent for Calpro, had a number of telephone conversations with employees of Superior concerning Calpro's claim that Superior was responsible for the defective condition of the annealing oven on its arrival in California. [Affidavit of Amaral, ¶ 5].

3.

Mr. Amaral was informed by one or more employees of Superior that there would be some delay involved in Superior's handling of the claim because Superior did not have a local representative in California. [Affidavit of Amaral, ¶ 6].

4.

In the course of his conversations with employees of Superior, Mr. Amaral was also informed that a determination of Calpro's claim would be delayed until a representative of Consolidated Engineering Company of Georgia, Inc. or some other person could examine the oven to determine the extent of the damage attributable to Superior. [Affidavit of Amaral, ¶ 7].

5.

Finally, in the course of Mr. Amaral's discussions with employees of Superior, those employees were fully informed of the nature of Calpro's claim, and they indicated a willingness to investigate the claim and to satisfy the claim if Superior was found to be at fault. [Affidavit of Amaral, ¶ 8].

6.

Within a period of a little more than a month after delivery of the oven, Superior had written evidence in its files indicating the nature of the goods damaged, the nature of the damage and the cause of the damage. [Affidavit of Willingham, Exhibits "A" and "B"].

**7.**

This written evidence indicates that while the oven was being shipped, the braces broke and the tarps covering the oven were torn by the wind. [Affidavit of Willingham, Exhibit "B"]. The written evidence indicates that the claims office of Superior was to be informed. [Affidavit of Willingham, Exhibit "B"].

**8.**

The driver for Superior indicated in writing that the insulation in the oven was damaged and that some of it had come out of the oven. [Affidavit of Willingham, Exhibit "B"]. The driver inspected the oven and pictures were taken of it. [Affidavit of Willingham, Exhibit "B"]. It was noted that "22 blocks of insulation went bad" and that "moisture got to them". [Affidavit of Willingham, Exhibit "B"].

Movant Superior has now attached to its supplemental brief in support of its motion the Affidavit of Thomas F. Ryan, with an exhibit. The affidavit and exhibit indicate the existence of another undisputed material fact: that on November 21, 1978, within one month of the October 24, 1978 delivery date of the oven, defendant Superior's insurance manager and affiant, Mr. Ryan, sent plaintiff Calpro a letter, the full text of which follows.

Enclosed is a cargo claim form calling for completion along with all necessary documents. Upon receipt of the completed form we will conduct our necessary investigation and contact you further.

When writing or calling please refer to the above file number.

Attached to the letter was a "Standard Form for Presentation of Loss and Damage Claim." Calpro never filed the form supplied by Superior or any other written claim. Affidavit of Thomas F. Ryan, November 10, 1980, ¶ 4.

Plaintiff's arguments in opposition to the motion for summary judgment, based on the foregoing facts, are (1) that the notation, "Received Damaged," written on the shipping receipt by an employee of Calpro above his signature, along with various oral communications concerning the damage to the oven (which resulted in the carrier's actual knowledge of the claim), amount to compliance with the written claim requirement of the bill of lading and tariff, as construed in the cases, the ICC regulations being inapplicable in this case; and (2) whether or not the claim was sufficient, defendant Superior is estopped from asserting this defense, or had "waived" its right to receive a written claim.

■■■ For the reasons set forth below, the Court concludes: (1) that the I.C.C. regulations were applicable to this transaction; (2) that defendant Superior never received a proper claim in writing as required by the tariff and the regulations; and (3) that neither estoppel nor waiver principles apply. Accordingly, defendant Superior's motion for summary judgment is GRANTED.[2]

---

**2.** The Court notes that even had it determined that the regulations were inapplicable to this transaction, the same result would in all likelihood be required. First, there are few cases in which so thin a writing has been held to satisfy a written claim requirement, absent the application of waiver or estoppel principles. The writing in the instant case–"Received Damaged"–is not a claim at all but a statement concerning the condition of the oven. See *Conagra, Inc. v. Burlington Northern, Inc.*, 438 F.Supp. 1266, 1268 (D.Neb.1977) (a written claim must "inform the carrier of the shipper's claim for damages. Notice of the existence of the loss is not sufficient. The aggrieved party must manifest his intent to hold the carrier accountable."). Broad language in the case of

*Thompson v. James G. McCarrick Company*, 205 F.2d 897 (5th Cir. 1953), to the effect that the written claim requirement may be satisfied by the claimant's supplying "sufficient information upon which a prompt and complete investigation can be based," *id.* at 901, must be read in light of the Fifth Circuit's assumption that the written information shall include a statement of the claimant's intent to hold the carrier liable. *See Atlantic Coast Line Railroad Company v. Pioneer Products, Inc.*, 256 F.2d 431, 433, n. 3 (5th Cir. 1958) ("As our opinions in *East Texas Motor Freight Lines v. United States*, 239 F.2d 417 (5th Cir. 1956) and *Thompson v. James G. McCarrick Co.*, supra, as well as others reflect, the usual question [in determining whether the written claim requirement

In plaintiff Calpro's supplemental memorandum in opposition to Superior's motion for summary judgment, Calpro argues that the Interstate Commerce Commission's Regulations concerning claims against interstate carriers, 49 C.F.R. § 1005, are not even applicable to cases where responsibility for the damage or loss is contested by the carrier. *Wisconsin Packing Company v. Indiana Refrigerator Lines, Inc.*, 618 F.2d 441, 445–46 (7th Cir. 1980) (*en banc*, vacating 604 F.2d 1022 (7th Cir. 1980) (panel opinion)), *cert. den.* —— U.S. ——·, 101 S.Ct. 112, 66 L.Ed.2d 44 (October 7, 1980).[3] There is some merit to this position.

The heading for these I.C.C. regulations is "Part 1005–Principles and Practices for the Investigation and Voluntary Disposition of Loss and Damage Claims and Processing Salvage." The use of the word 'voluntary' in the heading, and in § 1005.2(a) ("A claim for loss or damage ... shall not be voluntarily paid by a carrier unless filed in writing....") provides the basis for reasonable inference that the regulations were promulgated to "make claim *settlement* more expeditious by providing procedures for the *voluntary* disposition of claims by carriers. ... Instead of attempting to regulate the process of judicial determination of claims, the I.C.C. indicated that its intention was to encourage parties to follow formal procedures that would make it unnecessary for them to face the unattractive prospect of time--consuming, expensive and potentially unavailing litigation in the district courts." *Wisconsin Packing, supra*, 618 F.2d at 445. Thus the Seventh Circuit understood the regulations to be advisory in nature, formal guidelines for settlement procedures, should both parties wish to settle.[4] The I.C.C. regulations, in the view of the Seventh Circuit, do not even apply to contested or disputed claims.

But every other federal district or appellate court to consider the question of the I.C.C. regulations' scope has reached the opposite conclusion.[5] The following cases stand for the proposition that the I.C.C. regulations at 49 C.F.R. § 1005 apply to

of an American bill of lading has been met] is whether the writing sufficiently makes a *claim* in the sense of asserting that, because of the physical damages otherwise reported or known, the shipper intends to hold the carrier liable for, and thereby seeks recovery of, the money value of the loss.").

Second, Superior never acknowledged liability, and mere knowledge of damage acquired by the carrier "does not, in our opinion, have the effect of releasing [claimant] from the obligation of complying with the provisions as to notice set forth in the contract of carriage." *East Texas Motor Freight Lines, supra*, 239 F.2d at 418. Moreover, the letter sent to Calpro by Mr. Ryan on November 21, 1978 would effectively rebut any argument that estoppel or waiver applied in this case.

3. "Because the writ is discretionary, a denial of certiorari ordinarily 'carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review.'" *L. Tribe, American Constitutional Law*, page 35, n.8 (1978), citing *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912 at 919, 70 S.Ct. 252 at 255, 94 L.Ed. 562 (1950).

4. It should be noted that the *Wisconsin Packing* court devoted significantly more space and analysis to alternate holdings. *Wisconsin Packing, supra*, 618 F.2d at 445 (ICC regulations inapplicable); and at 445–48.

5. For reasons unknown to this Court, a substantial number of cases decided since the regulations were issued in 1972 have decided the question of whether the written claim requirement was met under the case law that has developed, without any mention of the I.C.C. regulations and their applicability to the claim at issue. *See Atchison, Topeka and Santa Fe Railway Company v. Littleton Leasing and Investment Company, Inc.*, 582 F.2d 1237 (10th Cir. 1978); *Westhemeco Ltd. v. New Hampshire Insurance Company*, 484 F.Supp. 1158 (S.D.N.Y.1980); *Conagra, Inc. v. Burlington Northern, Inc.*, 438 F.Supp. 1266 (D.Neb.1977); *MGD Graphic Systems Americas Company v. Acme Fast Freight, Inc.*, 437 F.Supp. 10 (N.D. Ill.1977); *Stearns–Roger Corporation v. Norfolk and Western Railway Company*, 356 F.Supp. 1238 (N.D.Ill.1973). *See also H&M Motor Lines, Inc. v. Georgia Best Sales Company*, 149 Ga.App. 231, 253 S.E.2d 841 (1979). A recent reported case from this circuit dealing with the question, *Miller v. Aaacon Auto Transport, Inc.*, 447 F.Supp. 1201 (S.D.Fla.1978), aff'd without opinion, 614 F.2d 292 (5th Cir. 1980), *cert. den.* —— U.S. ——, 101 S.Ct. 315, 66 L.Ed.2d 145, likewise fails to address the issue of the applicability of the regulations. Thus this motion by Superior presents a question of first impression in the circuit.

litigated claims for loss or damage against interstate carriers. *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900 (2d Cir. 1980), reversing on other grounds (i.e., *not* as to the applicability of the ICC regulations) *Pathway Bellows, Inc. v. Blanchette*, 78 Civ. 2100 (LBS) (S.D.N.Y., June 14, 1979) (slip opinion); *Perini–North River Associates v. Chesapeake and Ohio Railway Company*, 562 F.2d 269, 271 n.2, 274 (3d Cir. 1977); *Foster Wheeler Energy Corporation v. Daily Express, Inc.*, 485 F.Supp. 268, 271·72 (M.D.Pa.1980); and *Venetian Terrazzo Company v. Chicago, Rock Island & Pacific Railroad Company*, 453 F.Supp. 1021, 1024 (E.D.Mo.1978). To the same effect were *Henry Pratt Company v. Stor Dor Freight Systems, Inc.*, 416 F.Supp. 714, 715 (N.D.Ill. 1975), and the district court and panel opinion (at 604 F.2d 1022) in *Wisconsin Packing, supra*, before the en banc decision of the Seventh Circuit in *Wisconsin Packing* was released, 618 F.2d 441. The reasoning behind the conclusion that the I.C.C. regulations are applicable to a disputed claim is best set forth in the Second Circuit's *Pathway Bellows* opinion, *supra*.

First, despite the use of the word 'voluntary' in two other instances, the section of the regulations delineating the scope of application contains no such limiting language.

§ 1005.1 Applicability of regulations.

The regulations set forth in this part shall govern the processing of claims for loss, damage, injury, or delay to property transported or accepted for transportation, in interstate or foreign commerce, by each railroad, express company, motor carrier, water carrier, and freight forwarder (hereinafter called carrier), subject to the Interstate Commerce Act;

. . . .

The Second Circuit found support for this statement of the applicability of the regulations in the legislative history.

Moreover, the I.C.C. quite clearly stated that

We are persuaded by the record in this proceeding that our regulations should embrace the full range of matters relating to the filing of claims, including a prescription of minimum filing requirements and a consideration of documents that do not constitute claims, and claims for uncertain amounts. . . . Thus, the rules set forth in sections 1005.1 and 1005.2 . . . first establish their overall applicability and then set out the manner and form in which loss and damage claims must be filed by claimants in order to accomplish the improvements shown to be required in the public interest in this area.

Ex Parte No. 263, [340 I.C.C. 515, 555–56 (1972)].

*Pathway Bellows*, supra, at n.7. The court also noted the *Wisconsin Packing* court's concern with the I.C.C.'s authority to promulgate the regulations but distinguished between "prescribing the form a properly constituted claim must take and that of determining the substantive merits of that claim." While the I.C.C. lacks the latter, it possesses the former.

It appears, therefore, that the ICC intended to promulgate regulations that would apply generally to all claims and we can perceive no lack of statutory authority vested in the Commission which would frustrate it from fulfilling its intention. *See* discussion of statutory and case law basis for the Commission's authority to promulgate these regulations in Ex Parte No. 263, *supra*, 340 I.C.C. at 542–46.

*Id.* This Court concurs in that view.

Second, the dual scheme that results from the Seventh Circuit's view of the regulations furthers neither of the purposes of the written claim requirement.[6] The regulations set up a scheme which is triggered by the filing, within the time provided by the bill of lading and tariff,[7] of a written claim

---

6. The purposes of the written claim requirement are "to facilitate the prompt investigation of claims and insure equality among shippers," *Miller v. Aaacon Auto Transport, Inc., supra*,

447 F.Supp. at 1204, cited with approval in *Wisconsin Packing, supra*, 618 F.2d at 446.

7. In this case, the period is nine months.

(1) identifying the property involved; (2) asserting liability against the carrier; and (3) making a claim for a specific or determinable amount. The filing of this claim triggers a number of obligations on the part of the carrier; the language used in the regulations is mandatory. The carrier must, *inter alia*, acknowledge receipt of the claim in writing within thirty days; create a special file for each claim, with its own claim number; promptly investigate the claim; and "pay, decline or make a firm compromise settlement offer within 120 days after receipt of the claim...." The *Wisconsin Packing* case suggests that the carrier has no obligations under these regulations if the carrier declines to pay the claim as soon as it is presented. Alternatively, a shipper or consignee can avoid this process (though the burden on the claimant under 49 C.F.R. § 1005 is slight) by presenting the sort of incomplete claim of which the cases under the Carmack Amendment are made—a claim which does not contain the three simple items above but which, under the cases, meets the requirement. The point of such a voluntary settlement procedure, (no sanctions attaching to non–use of the procedure) is dubious. It appears to provide neither carrier [8] nor claimant with any incentive not already present to settle a claim.

Third, these regulations, insofar as they are contested by Calpro here (49 C.F.R. § 1005.2(a), (b), and (c)), were not intended by the I.C.C. to

> afford carriers an unfair opportunity to escape liability. The minimum filing requirements appear to call for no more information than one ordinarily would expect a claim for damages to contain,

and compliance with these requirements is neither onerous nor unreasonable. To the extent that carriers may escape liability, such 'windfalls' may be properly traced, not to the existence of the regulations, but to shippers' unexcused failures to comply with a reasonable condition contained in bills of lading.

. . . . .

> ... Having required a carrier to take certain actions once a claim is received, we think it is neither inappropriate nor beyond the authority of the ICC at the same time to provide a carrier with some guidance as to what constitutes a claim, so that a carrier may know one when it sees one.

*Pathway Bellows, supra.* This Court concludes that the regulations provide the appropriate standard for assessing the sufficiency of Calpro's written claim. "Received Damaged" falls far short of the mark set by 49 C.F.R. § 1005.2(b). In fact, it falls within 49 C.F.R. § 1005.2(c), *Documents not constituting claims.*

■ Even assuming that waiver is an appropriate argument for a claimant to raise once a carrier has shown that claimant failed to file a written claim within the time required, a proposition in some doubt,[9] it is undisputed in this case that within a month of the arrival of the damaged oven, the carrier Superior *solicited a written claim* from Calpro. On the other hand, Calpro has come forward with no evidence, by affidavit or otherwise, that Superior ever waived its right under the contract to receive a written claim within nine months.

Nor has Calpro come forward with any evidence supporting its theory that Superior

---

**8.** Moreover, the *Wisconsin Packing* interpretation *would* permit a carrier to discriminate among shippers. A carrier could use this procedure to settle claims of preferred shippers and routinely decline to pay others under 49 C.F.R. § 1005.5, thus forcing other claimants to litigate.

**9.** *See Georgia, Florida, & Alabama Railway Company v. Blish Milling Company,* 241 U.S. 190, 197, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1915), in which the Supreme Court held that the parties could not waive the terms of the contract;

"nor could the carrier by *its* conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed." *But see Miller v. Aaacon Auto Transport, Inc., supra,* 447 F.Supp. at 1204–05.

by its actions is estopped from raising the written claim requirement defense. The facts adduced by Calpro in the affidavits and in its statement of material facts and disputed material facts tend to show (1) that certain of Superior's employees had actual knowledge of the damage to the oven and (2) that there might be some delay in investigating and processing any claim filed, because Superior had no representatives in California, where the damaged oven was. Neither of these facts is inconsistent with Superior's legal theories in this motion for summary judgment; again, Superior's request that Calpro file a written claim on a form provided by Superior undercuts Calpro's estoppel argument.

Finally, Calpro also requests that the Court defer ruling on the motion for summary judgment until Calpro can more fully discover facts supporting its estoppel theory. But behavior of Superior on which Calpro was entitled to rely and did rely [10] would necessarily be within the knowledge of Calpro's own employees and agents. A party opposing a properly supported motion for summary judgment who lacks countervailing evidence and cannot show that such evidence will be forthcoming is not entitled to denial of the motion "on the basis of a hope that such evidence will develop at the trial." 6 *Moore's Federal Practice* ¶ 56.-15[3], page 56–481.

Accordingly, defendant Superior Trucking Company's motion for summary judgment is GRANTED. The Court is aware that the result it reaches is severe, in light of the evidence that the oven was damaged in transit. But this is the result the law requires, and to the extent that Superior is relieved from liability, plaintiff Calpro and shipper Textile Industrial Welding are responsible for not properly following up the claim in writing as required by the tariff, the bill of lading, and the I.C.C. regulations.

### CONCLUSION

Because defendant Ray Paul Enterprises, Inc.'s motion to strike is not a part of the

record before this Court, no ruling can be made at this time. The motion for substitution of counsel is GRANTED. The name of Mr. John L. Respess, Jr. shall be STRICKEN from the record; let the names of Mr. C. James Jessee, Jr. and Mr. Jeffrey L. Sakas, and the firm of Jessee, Ritchie & Duncan, P. C. be ENTERED as counsel of record for defendant Consolidated Engineering Company of Georgia, Inc. New counsel should note that Consolidated Engineering Company's responsive pleadings are not part of the record in this Court. Defendant Superior Trucking Company, Inc.'s motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

**10.** And hence would estop Superior from raising as a defense the written claim requirement

of the tariff, bill of lading and regulations.