**M. W. LOVELESS, dba Loveless Manufacturing Company, a sole proprietorship, Appellant,**

v.

**UNIVERSAL CARLOADING & DISTRIBUTING COMPANY, Inc., a corporation, Appellee.**

**No. 5075.**

United States Court of Appeals
Tenth Circuit.

July 29, 1955.

John M. Wheeler, Tulsa, Okl. (Wheeler & Wheeler, John Wheeler, Jr. and Robert L. Wheeler, Tulsa, Okl., were with him on the brief), for appellant.

William J. Treadgill, Tulsa, Okl. (Joseph N. Shidler, Tulsa, Okl., was with him on the brief), for appellee.

Before BRATTON and MURRAH, Circuit Judges, and WALLACE, District Judge.

MURRAH, Circuit Judge.

M. W. Loveless, dba Loveless Manufacturing Company, sued Universal Carloading & Distributing Company, Inc. as the terminating carrier, for damages to machinery shipped under a bill of lading in interstate commerce. The case was removed from the state court to the federal court on requisite diversity of citizenship and amount in controversy and as one arising under the laws of the United States.

The undisputed facts are that Loveless orally notified Universal's local manager, Gillam, on May 5, 1952, that he would not accept delivery of the damaged goods. One of Universal's warehousemen then inspected the machinery, noting upon the consignment memo the extent of apparent damage and signing his name thereto. After extensive negotiations between Loveless and Gillam, Loveless agreed to accept the machinery and install it, with the understanding that a formal claim for ultimately ascertained damages could be filed at any time within two years. And on the same date Gillam wrote Loveless enclosing the consignment memo, stating:

"You will note this freight bill carries notation as to damage noted on arrival.

"Inasmuch as this does not nor is intended to cover probable damage that might exist due to apparent rough handling on the part of the carriers, we have notified both the Frisco and the New York Central that the shipment had shifted approximately five feet and that the lags holding the machine to the skids had been pulled away from the machine, indicating that the car had been terrifically humped somewhere along the line.

"This will protect you in the event claim will be filed, for a period of up to two years. As you explained it will be possible to determine the damage, if any, long before that time, but just to make sure, we have

notified the carriers that claim will be filed, undetermined amount at some future date * * * "

The machine did not function properly from the time of installation, but Loveless did not present a formal claim for the damages until December, 1953, 19 months after delivery. Universal denied the claim solely on the ground that not having been filed within 9 months of the delivery date, it was barred by Sec. 2(b) of the bill of lading, which provides in presently material part that:

"As a condition precedent to recovery, claims must be filed in writing with the * * * carrier * * * within nine months after delivery of the property * * * " and " * * * Where claims are not filed * * * in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

The decisive question is whether the writings between the parties can be said to be a claim "in writing" within the meaning of Sec. 2(b) as judicially construed and applied.

Loveless contends that the notation by Appellee's warehouseman on the consignment memo together with the letter from Appellee's local manager to him, constitute a substantial compliance with the notice requirements of Sec. 2(b) of the bill of lading; and that in any event actual knowledge of the damages by Universal served as timely notice to initiate the necessary investigation by the carrier and thus excused the filing of a claim. Loveless also pleads estoppel to assert non-compliance with Sec. 2(b) having acted to his prejudice upon representations of the local manager that he had two years within which to file a claim.

While the trial court was impressed with the equities of Loveless' contentions, it was nevertheless constrained to deny the claim on the grounds that neither the notation on the consignment memo nor the letter written by Gillam, separately or together, constituted a sufficient claim "in writing" as required by Sec. 2(b) of the bill of lading; and that the facts did not justify the imposition of equitable estoppel.

■ The Carmack Amendment to the Interstate Commerce Act, Title 49 U.S.C. A. § 20(11), specifically requires the carrier to issue a bill of lading for property received for transportation in interstate commerce. And it also forbids the carrier from contracting for the filing of claims within a shorter period than nine months. While the statute does not specifically provide that notice of claim shall be in writing, or for that matter in any other particular form, Sec. 2(b) has historically been incorporated in the uniform bill of lading as a safeguard against tariff abuses and discriminations. The requirement in 2(b) that the notice of claim shall be "in writing" has come to be an integral part of the uniform published tariffs and regulations which the carrier may not waive or be estopped to assert. Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 S.Ct. 541, 60 L.Ed. 948; Chesapeake & Ohio Ry. Co. v. Martin, 283 U. S. 209, 21 S.Ct. 453, 75 L.Ed. 983; Insurance Co. of North America v. Newtowne Mfg. Co., 1 Cir., 187 F.2d 675; Burns v. Chicago, M., St. P. & P. R. Co., 8 Cir., 192 F.2d 472; Delphi Frosted Foods Corp. v. Illinois Cent. R. Co., 6 Cir., 188 F.2d 343.

■ To satisfy the requirements of Sec. 2(b) the writing need not be in any particular form. It is sufficient if it apprises the carrier that damages have occurred for which reparations are expected, so that the carrier may make a prompt investigation consistent with the "practical exigencies of the situation." Georgia, Fla. & Ala. Ry. Co. v. Blish, supra; Thompson v. James G. McCarrick Co., 5 Cir., 205 F.2d 897; Insurance Co. of North America v. Newtowne Mfg. Co., supra; Minot Beverage Co. v. Minneapolis & St. Louis Ry. Co., D.C., 65 F. Supp. 293. Thus the practical construction of Sec. 2(b) has been satisfied by an exchange of telegrams between the

shipper and the carrier the last of which claimed damages for the total loss, Georgia, Fla. & Ala. Ry. Co. v. Blish, supra; by a timely informal letter from the shipper's agent to the carrier stating that a claim "will be filed against you" on a specified shipment, Minot Beverage Co. v. Minneapolis & St. Louis Ry. Co., supra; and by writings entitled "statements of protest" and "placement notices" filed with the carrier's agent stating damages, identifying the shipment, and containing the notation "this is consignee's claim", Thompson v. James G. McCarrick Co., supra.

Formal written notice was deemed unnecessary in Hopper Paper Co. v. Baltimore & O. R. Co., 7 Cir., 178 F.2d 179, 182, where the carrier had actual knowledge of the damage and had notified the shipper thereof. "In such a situation a formal notice by plaintiff to the defendant could not have accomplished anything more. * * *" and " * * * the carrier may not use the provisions of the bill of lading to shield itself from the liability imposed upon it by the statute and the common law for its negligent destruction of the shipper's property. To hold otherwise would not be construing the bill of lading 'in a practical way.'" As against the contention that dispensation with the requirements of the formal written notice would open the door to widespread discrimination, hence frustration of the purpose of the Interstate Commerce Act, the court took the view that actual knowledge in lieu of written notice was neither discriminatory nor a preference in favor of one particular shipper at the expense of another but rather a mode of proof "applicable alike to all railroads and in favor of all shippers."

While the Hopper case was deemed "perhaps out of line with * * * other cases" in Insurance Co. of North America v. Newtowne Mfg. Co., supra [187 F.2d 681], the court was at pains to point out that in the Hopper case the carrier at least "knew that the loss had occurred during the transportation on its line and had so advised the shipper by telegram." Whereas in the Newtowne case the carrier had no record of having accepted any shipment, had no knowledge of the loss, and denied responsibility for it. Notice or knowledge of the loss was in issue. In these circumstances the court refused to open the door to possible abuses by admitting oral proof of actual notice or knowledge.

The Hopper case was again distinguished in Delphi Frosted Foods Corp. v. Illinois Cent. R. Co., supra, where the shipper's customers who had contracted to purchase portions of the shipment gave notice of the damage to the delivering carrier. The case went off on the theory that the person damaged, not having filed the claim, the notice given did not substantially comply with the requirements of the bill of lading.

The Hopper case was also distinguished in the light of its "unusual circumstances" in Northern Pac. Ry. Co. v. Mackie, 9 Cir., 195 F.2d 641, where the carrier's written report noted the damages and that the consignee would call for final inspection, but specifically denied that it was an acknowledgment of liability. And in the language of Sec. 2(b) the report stated that a claim must be filed in writing with the carrier within nine months after the delivery of the property. Neither the consignee nor the shipper called for final inspection and no formal claim was submitted within nine months of the delivery. The trial court rejected the carrier's plea of untimeliness, but the case was reversed on the grounds that to disregard the condition precedent to recovery incorporated in the bill of lading would "under the circumstances shown, open the door to evasions of the spirit and purpose of the Act * * *" See also Louda v. Prague Assurance-National Corp., 1952, 347 Ill.App. 211, 106 N.E.2d 757 and Cf. Public Service Electric & Gas Co. v. Reading Co., 1951, 13 N.J.Super. 383, 80 A.2d 473.

Loveless leans heavily upon the holding and philosophy of the Hopper case,

as indeed he may, for we think his facts outweigh the considerations which prompted the court's decision in the Hopper case. In both cases the carrier acknowledged the damages and the cause thereof. In the Hopper case, however, the extent of the damages was immediately known and nothing prevented the immediate filing of a formal claim for the complete loss. In our case the extent of the damages was not at once ascertainable, the parties agreeing that when they were the shipper would file a claim "at some future date." Universal so notified the originating and intermediate carriers. After the damages were ascertained, a formal written claim for the amount thereof was filed, and the carrier does not now contend that it was in any manner prejudiced by the failure to receive the formal claim within the nine-month period.

In the Hopper case actual knowledge without more constituted the written claim. Here, however, we have not only a notation of the fact of damages written upon the face of the freight bill, but more important, we have an acknowledgment in writing by the carrier that damages were sustained by carelessness in transit, and that a formal claim would be filed at some future date when the damages were ascertained. Such writing is nonetheless a claim "in writing" within the purposes of Sec. 2(b) simply because it takes the form of an acknowledgment of the damages and the cause thereof in the hand of him who is to be held liable when the extent thereof is determined. Certainly it is no perversion of public policy to denominate the carrier's acknowledgment of damages and liability a claim "in writing" to be formalized when the extent of damages is determinable. To so construe the writing leaves no doors open for abuses and discriminations which the stipulation in Sec. 2(b) was intended to prevent. And we therefore hold the written acknowledgment of damages to be a claim in writing within the meaning and purposes of Sec. 2(b) of the bill of lading. The judgment is accordingly reversed.

WALLACE, District Judge (dissenting).

Although the stipulation in Sec. 2(b) of the bill of lading does not specifically mention who shall file written notice of claim it is apparent such must be done by the claimant or "one acting in his behalf";[1] and, to receive the writing in question as filed on the appellant's behalf is absolute fiction. Understandably, the courts have been liberal in searching for "substantial compliance". Nonetheless, the written notice, although permissibly informal in character, must be lodged by the holder of the claim. The instant written acknowledgment in no way pretended to be a filed claim. This defect could be overlooked if the potential claimant had *authored* the writing thus placing with the carrier a permanent record of a definite claim, although future. However, a liberal construction of the writing in question cannot cure the appellant's omission.

The only visible support for the majority ruling is the Hopper case, a maverick decision both on its facts and law.[2] Although the Hopper decision creates a patent conflict in the law at the court of appeals level,[3] the unbroken line of acceptable authority denies appellant's right to now sue.[4] As pointedly recognized in Northern Pac. Ry. Co. v. Mackie,

1. See Appalachian Electric Power Co. v. Virginian Ry. Co., 1944, 126 W.Va. 626, 29 S.E.2d 471, 474; and, Delphi Frosted Foods Corp. v. Illinois Cent. R. Co., 6 Cir., 1951, 188 F.2d 343, 345.

2. Hopper Paper Co. v. Baltimore & O. R. Co., 7 Cir., 1949, 178 F.2d 179.

3. See Insurance Co. of North America v. Newtowne Mfg. Co., 1 Cir., 1951, 187 F.2d 675; and, Delphi Frosted Foods Corp. v. Illinois Cent. R. Co., footnote 1, supra. Cf. Northern Pac. Ry. Co. v. Mackie, 9 Cir., 1952, 195 F.2d 641.

4. Ibid. Also, cf. Georgia, Fla. & Ala. Ry. v. Blish Milling Co., 1916, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948.

the fact the carrier has *actual* knowledge of the loss is totally irrelevant; the aggrieved party must make written claim within the stipulated time.[5]

Generally, the equities are with the appellant; however, they are not such as to justify a "making of poor law". Appellant's own inaction leaves much to be desired. In absolute affront to the 9 month limitation contained in the bill of lading, appellant failed to file in his own behalf any semblance of a written claim for damages until the institution of this court action some 19 months after the loss and after the time he was apprised of his claim.

A clearly defined and long recognized legal principle, a standing bulwark against claimant discrimination, should not be vitiated by the single stroke of a judicial pen merely because certain harshness of fact inheres in a lone case.

The judgment of the trial court should be affirmed.

---

5. Footnote 3, supra, 195 F.2d at page 642.