The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellee,

v.

LITTLETON LEASING AND INVESTMENT COMPANY, INC., Appellant.

No. 77–1119.

United States Court of Appeals, Tenth Circuit.

Submitted and Decided Sept. 6, 1978.

James F. Howell, Howell, Webber & Sharpe, Midwest City, Okl., for appellant.

Michael Minnis, Rainey, Wallace, Ross & Cooper, Oklahoma City, Okl., for appellee.

Before SETH, Chief Judge, BARRETT and McKAY, Circuit Judges.

SETH, Chief Judge.

The Atchison, Topeka and Santa Fe Railway Company (Santa Fe), the plaintiff below, sued Littleton Leasing and Investment Company, Inc. (Littleton) for freight charges incurred for the transportation of five shipments. Littleton "crossclaimed" against Santa Fe for damages to the freight which we take to be a counterclaim under Fed.R.Civ.P. 13. Santa Fe moved for summary judgment on its complaint and on Littleton's counterclaim. The district court granted summary judgment for Santa Fe on both claims. Littleton has not appealed the judgment for freight charges but has appealed the judgment against its counterclaim.

The central question here is whether Littleton complied with the claim requirement of section 2(b) of the uniform bill of lading which provides that a written claim be filed within nine months with the carrier. Littleton contends on appeal that its counterclaim should not have been denied because it substantially complied with section 2(b) by one or both of the following transactions: (1) an exchange of letters between Littleton and Santa Fe; (2) the complaint of Santa Fe and the answer of Littleton to that complaint. We hold that neither one of the transactions above substantially complied with the claim requirement of section 2(b) of the uniform bill of lading.

This case arises under the Carmack Amendment of the Interstate Commerce

Act, 49 U.S.C.A. § 20(11). The shipments in question were transported under uniform bills of lading which form the contract between the parties. Section 2(b) of the bill of lading provides in part:

"As a condition precedent to recovery, claims must be filed in writing with receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property. . . . Where claims are not filed . . . in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

Subsequent to plaintiff's delivery of defendant's goods on June 30, 1975, and defendant's failure to pay its freight bill, correspondence passed between plaintiff and defendant in which plaintiff attempted to collect on the outstanding freight debt, and defendant refused to pay. In July 1975, Santa Fe's centralized accounting bureau sent Littleton "past-due notices" for freight charges on the shipments. Littleton replied in a letter dated July 19, 1975, to the credit manager of Santa Fe:

"Be advised that we have not made payment on the invoices you refer to in that there are several damage claims against your firm that we are awaiting estimates. There were many windshields broken out and several severe body damages incurred to our vehicles while in your possession. I will appreciate it if you would have your people expedite their paperwork pertaining to this matter. Your forms, in many cases, were used to report damages.

"We respectfully [sic] request your procedure for payment of these above mentioned claims."

On July 25, Santa Fe's treasurer sent a letter to Littleton requesting payment and explaining to Littleton that freight charges were separate and independent from any alleged damage claims and that no offset could be made against the freight charges pending against Littleton. Five days later a "final notice" was sent to Littleton requesting payment. When there was no reply, Santa Fe sent Littleton a letter dated August 6 advising Littleton that Santa Fe had cancelled Littleton's credit. In reply to Santa Fe's letter, an August 8 letter from Littleton to Santa Fe's treasurer stated in part:

". . . [W]e have tried to make payment to you based upon receipt of credit memorandums for extensive damages incurred to the vehicles that you shipped to Atlanta and Raleigh for us. These damages were sustained while our vehicles were in your sole care and custody, and we do not intend to go to the trouble of running around the country in an effort to determine which interlocking carrier was at fault. Our position is that your firm was contacted to deliver our vehicles and that your firm is responsible for those damages."

On August 11, Santa Fe's treasurer sent a letter to Littleton informing them that Santa Fe had checked with their freight claim department, and that no damage claim had been received from Littleton concerning the shipments. The letter went on to say that Santa Fe, therefore, assumed that any damage claim must be one Littleton filed with the delivering carrier. This last letter ended the correspondence between Santa Fe and Littleton. The district court held these letters could not be considered a damage claim and explained its reasoning:

"During the course of said exchanges, defendant indicated at various times both an intention to file a claim and that such a claim had already been filed. Nowhere in the correspondence can it reasonably be inferred that a particular letter represents the filing of an actual claim, in and of itself, against the railroad. The point is neither obscure nor academic. Neither potential future claims nor claims filed in the past are in any manner or fashion the legitimate concern of the freight collection department, with whom defendant was corresponding. . . . Viewing the correspondence in its entirety, plaintiff's freight collection department could not reasonably be expected to have supposed that it was thereby being provided

with the railroad's sole, actual notice of defendant's claim and that it was therefore charged with the responsibility to convey such notice to the railroad's claim department."

In *Georgia, Florida & Alabama Ry. v. Blish Milling Co.,* 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948, the carrier made a delivery contrary to instructions. The shipper sent a final telegram to the carrier after its representative had met with agents of the carrier. The telegram read as follows: "We will make a claim against railroad for entire contents of car at invoice price. Must refuse shipment as we cannot handle." The Court noted that the preceding telegrams between the parties adequately identified the shipments. In upholding the validity of a provision of a bill of lading similar to the one at bar, the Court said:

"In fact the transactions of a railroad company are multitudinous and are carried on through numerous employees of various grades. Ordinarily the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction. The purpose of the stipulation is not to escape liability but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it *even with respect to its own operations.*" (Emphasis added).

The Court also said that a provision such as the one in question "does not require documents in a particular form. It is addressed to a practical exigency and it is to be construed in a practical way."

■ Generally any written document, however informal, which indicates a claim for damages is asserted, and identifies the shipment, will be adequate. *Georgia, Florida & Alabama Ry. v. Blish Milling Co.,* 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; *American Synthetic Rubber Corp. v. Louisville & N. R.R.,* 422 F.2d 462 (6th Cir.). In accordance with this liberal attitude, we have held

the requirement of a claim in writing has been satisfied where the carrier had inspected the damaged property noting the apparent damage, had acknowledged in writing that damages were sustained by carelessness in transit, and had agreed that a formal claim could be filed when itemized damages were ascertained. *Loveless v. Universal Carloading & Distributing Co.,* 225 F.2d 637 (10th Cir.). The Seventh Circuit also took a similar approach in an earlier case. *Hopper Paper Co. v. Baltimore & O. R.R.,* 178 F.2d 179 (7th Cir.). *But see East Texas Motor Freight Lines v. United States,* 239 F.2d 417 (5th Cir.), and *Perini-North River Associates v. Chesapeake & O. Ry.,* 562 F.2d 269 (3d Cir.).

■ It is clear from the cases that compliance with the written notice requirement of section 2(b) of the bill of lading is mandatory. The Supreme Court has not found compliance where the claim was a "verbal" one. *St. Louis, I. Mt. & So. Ry. v. Starbird,* 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917. Even actual knowledge on the part of the carrier's employees would not dispense with the requirement of notice of claim in writing. *Gooch v. Oregon Short Line R.R.,* 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443.

■ With these guidelines, and under the facts of this case, we are of the opinion that the appellant Littleton has not complied with section 2(b) of the uniform bill of lading.

Viewing the correspondence in its entirety, the shipper's letters are replies to claims for freight charges rather than damage claims. Although it is not necessary that there be a formal demand for damages in the written claim, the reasonable inferences to be drawn from correspondence, even in this light, are that these letters do not give notice of a damage claim by the shipper. It must be remembered that the purpose of the notice requirement is not to escape liability but to facilitate prompt investigation. Santa Fe was not provided adequate notice allowing it to initiate an investigation until well after the goods in question had been disposed of.

Furthermore, in cases relied upon by the appellant there were actual dealings with claim agents of the carrier aside from some type of written notice. *See American Synthetic Rubber Corp. v. Louisville & N. R.R.,* 422 F.2d 462 (6th Cir.), at 468; *Insurance Co. of North America v. Newtowne Mfg. Co.,* 187 F.2d 675 (1st Cir.), at 680–81. This factor was not present here. Neither were the circumstances of *Loveless* and *Hopper.*

■ Littleton's second contention is that its answer to plaintiff's complaint, filed March 15, 1976, satisfies the requirement of a written damage claim. In the answer defendant Littleton "alleges it entered into a Bailment Contract with Plaintiff," and ". . . that the Plaintiff through its negligence breached the above referred to Bailment Contract causing the Defendant to suffer money damages far in excess of Plaintiff's claim." We agree with the district court that these ". . . claims are so broad and conclusory, and so devoid of detail, as to be patently inadequate to constitute the damage claim required by the Uniform Bill of Lading." This is especially true in view of the fact that the answer was filed eight and one-half months after the delivery of the last shipments, and there was still no monetary amount for damages.

AFFIRMED.

McKAY, Circuit Judge, dissenting:

The majority acknowledges that the uniform bill of lading notice requirement generally will be satisfied by "any written document, however informal, which indicates a claim for damages . . . and identifies the shipment." *Accord, Georgia, Fla., & Ala. Ry. v. Blish Milling Co.,* 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916). Our opinion in *Loveless v. Universal Carloading & Distrib. Co.,* 225 F.2d 637 (10th Cir. 1955), illustrated how easily the notice requirement is met by holding that the railroad's own letter acknowledging shipping damages satisfied the requirement of a written claim, despite the fact that the claimant himself filed no writing. In the case before us, however, the majority upholds a summary judgment of noncompliance. It does so

even though the claimant submitted two writings to the railroad which gave notice of claimed shipping damages.

On July 19 and August 8, 1975, defendant Littleton drafted letters to Santa Fe indicating that damage had occurred to vehicles transported under the parties' contract. These letters, relevant portions of which are quoted in the majority opinion, more than satisfy the applicable authorities on the issue of written notice. They also comply with the underlying purpose of the requirement—to give the railroad an opportunity promptly to investigate a claim. *Georgia, Fla., & Ala. Ry. v. Blish Milling Co.,* 241 U.S. at 196, 36 S.Ct. 541. We observed in *Loveless* that:

[t]o satisfy the requirements of Sec. 2(b) the writing need not be in any particular form. It is sufficient if it apprises the carrier that damages have occurred for which reparations are expected, so that the carrier may make a prompt investigation consistent with the "practical exigencies of the situation."

225 F.2d at 639. A perusal of the letters drafted by Littleton reveals that they did give notice that damages had occurred and that reparations were expected.

Since the writings are at least as explicit as our precedent requires, the only other basis for holding them inadequate as a matter of law would have to be that they were directed to the wrong pigeonhole in the railroad's corporate empire. Surely we do not mean to say that an otherwise adequate notice of claim fails because it was directed to the wrong department. Even if that were the general rule, it would not justify summary judgment in this case. The August 11 letter from Santa Fe's treasurer demonstrates that at least one of the written notices came in a timely manner to the attention of a senior corporate official. Indeed, the August 11 letter reveals that the treasurer had discussed the matter with the railroad's own claim department, for it said: "Our claim department advises they have not received a claim filed by you." At the very least, a factual issue is presented as to whether Littleton's letter of July 19 ulti-

mately reached the "correct" department even if there was no duty on the part of the "incorrect" department to forward it to the appropriate pigeonhole.

Once it is shown that some kind of a writing identifying a claim has been sent to someone in the railroad's corporate structure, the adequacy of that notice is a fact question to be determined from the evidence. It would be a rare case indeed where summary judgment would be appropriate once such a writing has been sent. Once a motion for summary judgment has been made, all reasonable doubts as to the existence of a material fact must be resolved against the moving party. *Zampos v. United States Smelting, Ref. & Mining Co.,* 206 F.2d 171 (10th Cir. 1953); 6 *Moore's Federal Practice* § 52.27[1] (1976). Here the indications that Santa Fe had adequate notice are so strong as to render doubtful any finding other than compliance with the notice requirement. The absence of detailed monetary descriptions of the claim, of course, is not fatal to the validity of the notice. *Thompson v. James G. McCarrick Co.,* 205 F.2d 897 (5th Cir. 1953).

Since summary judgment was based on noncompliance with the notice requirement, I would reverse and remand for trial on the issue of the adequacy of the written notice which was given.