**GENERAL ELECTRIC CO., Plaintiff,**

**v.**

**BROWN TRANSPORT CORP., Defendant.**

**Civ. A. No. 83–861–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 26, 1984.

John D. Padgett, Henry P. Bouffard, Jett, Agelasto, Berkley, Furr & Price, Norfolk, Va., for plaintiff.

Forest A. Nester, Seawell, Dalton, Hughes & Timms, Norfolk, Va., for defendant.

## ORDER

DOUMAR, District Judge.

This is an action pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, to recover for cargo that was damaged while being shipped from Cleveland, Ohio to Norfolk, Virginia. The primary issues before the Court are:

(1) Whether or not the shipper-plaintiff was required to send a written claim to the carrier-defendant; and

(2) If a written claim was required, whether or not the purported written notice which failed to claim a specified or determinable amount of damages was sufficient to constitute a valid claim under the facts of the case.

After a trial without a jury, the Court rules that:

(1) the shipper was required to send a written claim to the carrier; and

(2) a valid written claim should contain a request for the payment of a specified or determinable amount of money, unless such information was not then available.

When information pertaining to the amount of damages is not immediately available it must be communicated to the carrier within a reasonable time after the shipper reasonably obtains the information. In the instant case, the shipper did not have information pertaining to the amount of damages when it sent its "Intent to Claim" letter, the purported written notice. The shipper, however, failed to communicate the amount of damages within a reasonable time after it obtained such information. The Court, therefore, enters judgment in favor of the defendant.

### 1. Facts

The facts may be summarized as follows. The plaintiff, General Electric Co., (G.E.) the owner of four electrical control panels, entered into a shipping contract with the defendant, Brown Transport Corp. (Brown). Acting as carrier, Brown was to deliver the goods of the shipper, G.E., to Norfolk, Virginia. The control panels were picked up by an agent of Brown on or about February 5, 1982 at the plant of the Automatic Sprinkler Corporation of America located in Cleveland, Ohio. The documents of transport did not note any exceptions as to the condition of the control panels when Brown took the panels into its care and custody. The panels were delivered by an agent of Brown on February 12, 1982 to Dixie Box and Crating located in Norfolk, Virginia. The delivery receipt, executed in Norfolk, noted exceptions to the condition of the electrical control panels. Thus, the control panels, in satisfactory condition when placed in the care and custody of Brown, were damaged by the time the shipment reached Norfolk. Therefore, it appears that the control panels were damaged while under Brown's care and custody. The electrical control panels were then returned to the Automatic Sprinkler Corp. for repairs. Prior to shipping the panels back to Cleveland, an inspector representing Brown ex-

amined the panels and signed an inspection report dated March 17, 1982 (Ex. 2).

G.E. claims to have sent a letter to Brown, dated March 9, 1982, expressing an intent to submit a claim (Ex. 7). Brown claims never to have received the letter in question. The purported letter sets forth the waybill number, the date of shipment, the route of the shipment and the contents of the cargo. Although the letter does not claim a specific or ascertainable amount of damages, it states that such information will be provided at a later date (Ex. 7). The last paragraph of the letter asks Brown to acknowledge "receipt of this Intent to Claim." *Id.* The control panels were then repaired and G.E. received a bill for the repairs in the amount of $10,200 on or about August 30, 1982 (Ex. 10).

There was no communication between G.E. and Brown from the time the purported letter of March 9th was sent until the middle of November 1982. Brown never acknowledged receipt of the March 9th letter, as G.E. had requested, nor did G.E. attempt to communicate with Brown. Nine months and three days after the control panels were noted as damaged and approximately two months and fifteen days after G.E. was aware of the amount of damages, a letter dated November 15, 1982, was sent to Brown setting forth damages in the amount of $10,681.80.[1] This letter was received by Brown on November 18, 1982 (Ex. 8). On November 30, 1982 Brown sent a letter to G.E. denying the claim because it was not filed within the nine month limit specified in Section 2(b) of the bill of lading (Ex. 15).

G.E. argues that the claim letter dated March 9 is sufficient to satisfy a written notice requirement. In the alternative, the plaintiff argues that the carrier's actual

knowledge of the damage is sufficient to satisfy a written notice requirement. Brown's position, on the other hand, is that section 2(b) of the uniform straight bill of lading, incorporated in the contract between parties, requires a claim to be in writing. Furthermore, this writing requirement cannot be satisfied by actual notice. Assuming *arguendo* that the March 9 letter was sent to it, the defendant is of the opinion that it was insufficient to establish a valid claim by virtue of 49 C.F.R. § 1005.(b) which provides, *inter alia*, that a written claim must set forth a specified or determinable amount of damages. Furthermore, the letter of November 15, setting forth the actual amount of damages, was sent after the 9 month time limit of Section 2(b) of the bill of lading.

The Court notes the importance of the issues presented inasmuch as they have not been previously addressed by this Court or the Court of Appeals for the Fourth Circuit. In addition, there appears to be a conflict between at least two United States Courts of Appeals.[2]

2. *Letter of March 9, 1982 Was Sent by G.E.*

As a preliminary factual matter, the Court must decide whether the March 9 letter was sent by G.E. to Brown. Robert J. Condon, the author of the letter, testified that he placed the letter in his outgoing mailbox located on his desk. He further testified that G.E. maintained a standard business practice of collecting letters from outboxes and depositing them into the U.S. mail system. A copy of this letter was also sent to the plaintiff's insurance agent. As evidence that the letter was mailed, the copy of the letter admitted in court contains a stamp denoting that it was received on March 12, 1982 by the plaintiff's insur-

---

1. The amount is comprised of the following:

| | |
|---|---|
| Cost of repairs | $10,200.00 |
| Reboxing | 187.92 |
| Reshipping to Cleveland for repairs | 123.06 |
| Shipping back to Norfolk | 170.82 |
| | $10,681.80 |

2. *Compare Wisconsin Packing Co. v. Indiana Refrigerator Lines,* 618 F.2d 441 (7th Cir.), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980) (49 C.F.R. § 1005 not applicable to disputed claims) *with Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981) (49 C.F.R. § 1005 applicable to disputed claims).

ance agent Marsh & McLennan (Ex. 7). Against the evidence presented by G.E., a witness for Brown testified that Brown never received the March 9 letter.

■ The Court acknowledges that, generally, proof that a letter was properly mailed raises the presumption that it was received by the addressee. *See Hartford Fire Ins. Co. v. Mutual Sav. & Loan,* 193 Va. 269, 68 S.E.2d 541 (1952); *Roto-Lith, Ltd. v. F.P. Bartlett & Co.,* 297 F.2d 497, 498 (1st Cir.1962). It is also noted that the effect of the presumption, never irrebuttable, may be different depending upon the rule in effect in the ·jurisdiction. *See* 9 Wigmore, Evidence § 2519 (Chadbourn rev. 1981). The proper effect tö be afforded this presumption is not an issue in a bench trial where a court, instead of a jury, is the finder of fact. A· problem that arises is that the testimony reveals that the letter was merely placed in an outbox to be picked up later by an employee, who, in the ordinary course of business, would then mail it. It is commonly recognized that evidence of a common business practice is sufficient to establish that a letter was mailed. *See Citizens' Bank & Trust Co. v. Allen,* 43 F.2d 549, 552· (4th Cir.1930); *Myers v. Moore-Kile Co.,* 279 Fed. 233, 235–36 (5th Cir.1922); 1A Wigmore, Evidence § 95 (Tillers rev. 1983). Based upon the above, the Court finds, as a matter of fact, that the March 9 letter was mailed by G.E. and therefore received by Brown. Brown's denial of receipt is, therefore, without effect. Having decided that the March 9 letter was received by Brown the Court will not consider whether it was necessary and sufficient in order to establish a valid claim.

### 3. *Written Claim Was Required*

The statute controlling the liability of common carriers under a bill of lading is

**3.** For a history of the statutory development in this area, see *Ex Parte No. 263: Rules, Regulations, and Practices of Regulated Carriers with*

codified at 49 U.S.C. § 11707. Commonly referred to as the Carmack Amendment to the Interstate Commerce Act and previously codified at 49 U.S.C. § 20(11), the statute was enacted to hold carriers accountable for damages to shipments and to curtail discriminatory practices of common carriers.[3] The statute operates to hold common carriers strictly accountable for any actual loss resulting from the transportation of property. It requires common carriers to issue a réceipt or a bill of lading for property it receives for transportation, § 11707(a), and prohibits carriers from providing less than 9 months for filing claims against it, § 11707(e). The statute, however, is silent as to what constitutes a valid claim and whether or not such a claim is required to be in writing. To fill this apparent void, Section 2(b), requiring that notice of a claim be in writing, was incorporated into the bill of lading. Section 2(b) has become a primary safeguard against discriminatory practices and an integral part of the uniform .published tariffs and regulations. *See Loveless v. Universal Carloading & Distributing Co.,* 225 F.2d 637, 639 (10th Cir.1955).

■ On February 5, 1982, the date of shipment, a shipping order numbered C12054 was executed (Ex. 14). The shipping order states that it is a bill of lading subject to the classifications and tariffs in effect on the date of the shipment. *Id.* Evidence submitted by Brown established the bill of lading terms then in effect by virtue of the National Motor Freight classification 100–H (See Ex. 17–19 and 27). Section 2(b) of the bill of lading provides:

As a condition precedent to recovery, *claims must be filed in writing* with the receiving or delivering carrier, or carrier· issuing this bill of lading, or carrier on

*Respect to the Processing of Loss and Damage Claims,* 340 I.C.C. 515, 521 (1972).

whose line the loss, damage, injury or delay occurred, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in the case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

(Ex. 18) (emphasis added).

Thus, the bill of lading, as incorporated in the shipping order, requires that a claim be filed in writing. The Court will now consider whether actual notice may substitute for the written notice requirement of the bill of lading.

### 4. *Actual Notice Does Not Substitute for the Requirement of Written Notice.*

Relying upon the case of *Hopper Paper Co. v. Baltimore & O.R.*, 178 F.2d 179 (7th Cir.1949), *cert. denied*, 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359 (1950), G.E. argues in the alternative that actual notice of the claim may substitute for the written notice requirement. G.E. argues that Brown had actual notice of the claim by virtue of an Inspection Report dated February 17, 1982 (Ex. 2) which contains the signature of an agent of Brown. After careful analysis, this Court declines to adopt the *Hopper* approach.

*Hopper* involved an action to recover for a shipment of paper that was damaged as a result of a collision between two trains owned by the defendant. 178 F.2d 180–81. The paper was shipped under a bill of lading containing Section 2(b) which required

claims to be filed in writing. *Id.* at 180. The shipper, however, failed to file a written claim. Finding that the carrier and its agents had knowledge of the facts concerning the damages and reasoning that allowing actual notice to substitute for the written notice requirement was in no way discriminatory, the court ruled in favor of the shipper.

■ The court in *Hopper* relied on the Supreme Court case of *Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916). In *Blish* the Court had an opportunity to consider what constitutes a valid written claim. Although the Supreme Court stated that the written notice provision of a bill of lading "does not require documents in a particular form" and that this requirement "is addressed to a practical exigency and ... is to be construed in a practical way," 241 U.S. at 198, 36 S.Ct. at 545, the *Blish* Court ruled that the writing in question, a telegram, was *a sufficient writing* to constitute a valid claim. Thus, the Supreme Court did not in any way substitute actual notice for the writing requirement of the bill of lading. Indeed, the Court stated that a timely written notice requirement "is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operations." *Id.* at 196, 36 S.Ct. at 544. The Supreme Court, in *Chesapeake & Ohio Ry. Co. v. Martin*, 283 U.S. 209, 222, 51 S.Ct. 453, 458, 75 L.Ed. 983 (1931) stated that the *Blish* decision stands for the principle that to permit noncompliance with the notice requirement "would be to alter the terms of a contract, made in pursuance of the Interstate Commerce Act and having, in effect, the quality of a statute of limitation, and thus to open the door for evasions of the spirit and purpose of the act to prevent preferences and discrimination in respect of rates and service." Furthermore, the Supreme Court, in *St. Louis Iron Mountain & S. Ry. Co. v. Starbird*, 243 U.S. 592, 606, 37 S.Ct. 462, 61 L.Ed. 917 (1917), held that

actual knowledge of the carrier in the form of verbal communications does not comply with a written notice requirement. A number of United States Courts of Appeals that have considered this issue have declined to adopt the *Hopper* reasoning.[4] This Court declines to adopt the *Hopper* approach and alter the contract between the parties. This Court holds that Brown's actual knowledge as evidenced by the Inspection Report does not meet, or substitute for, the written notice requirement. The Court will now consider the question of what constitutes a valid written claim.

5. *The March 9 Letter Was Not Sufficient to Establish a Valid Claim.*

The primary issue in this case amounts to whether or not the March 9 letter, which failed to claim a specific amount of damages, was sufficient to constitute a valid claim.[5] As previously stated, the statutory framework did not set forth the requirements of a valid claim. Section 2(b) of the bill of lading providing that claims be submitted in writing partially filled this void. The courts, however, were left with the task of determining the contents of the required writing. The vast amount of cargo claims brought in court resulted in long delays in their adjudication. Inconsistent court results coupled with long delays provided carriers with economic incentive to litigate even legitimate claims. See *Ex*

*Parte* No. 263, *supra* n. 3, 340 I.C.C. at 526. This situation created an excellent opportunity for carriers to engage in discriminatory practices. Carriers could admit liability and quickly pay the claims of favored shippers while dragging other shippers, with similar claims, through the long, inconsistent and expensive litigation process. *Id.* at 524, 544. This form of discrimination was one of the evils the Carmack Amendment sought to eliminate.

The Interstate Commerce Commission (ICC) considered these problems in a rather extensive general rulemaking proceeding, the purpose of which was to conduct an "all-embracing inquiry into the national loss and damage claims situation." *Id.* at 519. As a result of the rulemaking proceedings, the ICC promulgated regulations which "govern the processing of claims for loss, damage, injury, or delay to property transported or accepted for transportation, in interstate or foreign commerce," by each carrier subject to the Interstate Commerce Act. 49 C.F.R. § 1005.1. The regulations require claims to be submitted in writing, and set forth minimum filing requirements which include identifying the shipment, asserting liability and claiming damages of a specified or determinable amount of money. The regulations also contain a list of documents which do not constitute a valid written claim.[6]

4. See *Perini-North River Assoc. v. Chesapeake & O. Ry. Co.,* 562 F.2d 269, 273 (3d Cir.1977) ("We do not question the accepted rule that actual knowledge on the part of the carrier cannot substitute for the written notice required by a bill of lading."); *Atchison, Topeka & Santa Fe Ry. Co. v. Littleton Leasing Co.,* 582 F.2d 1237, 1240 (10th Cir.1978) ("[A]ctual knowledge on the part of the carrier's employees would not dispense the requirement of notice of claim in writing.")

5. The other written communication, a letter dated November 15, 1982 (Ex. 8), was sent after the 9 month limitation period and therefore cannot be considered.

6. The regulations provide as follows:
(a) *Compliance with regulations.* A claim for loss or damage to baggage or for loss, damage, injury, or delay to cargo, shall not be voluntarily paid by a carrier unless filed, as

provided in paragraph (b) of this section, with the receiving or delivering carrier, or carrier issuing the bill of lading, receipt, ticket, or baggage check, or carrier on whose line the alleged loss, damage, injury, or delay occurred, within the specified time limits applicable thereto and as otherwise may be required by law, the terms of the bill of lading or other contract of carriage, and all tariff provisions applicable thereto.
(b) *Minimum filing requirements.* A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall

Applying the regulations, it would appear that the March 9 letter fails to meet the minimum filing requirements in that it does not make a "claim for the payment of a specified or determinable amount of money." The plaintiff attempts to cure this apparent defect by arguing that the ICC regulations are not applicable to disputed claims under the rule of the Seventh Circuit as developed in *Wisconsin Packing Co. v. Indiana Refrigerator Lines,* 618 F.2d 441 (7th Cir.) *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980).

In *Wisconsin Packing* the shipper sued the carrier because a defective shipment was rejected by a third party. The shipper and carrier exchanged only one written communication during the applicable 9 month period. 618 F.2d at 443. As the written notice in the case at bar, the letter failed to state a specific dollar amount of damages. *Id.* n. 2. The court determined that the purpose of the regulations was to encourage parties to voluntarily settle their disputes. The court, seizing upon certain language,[7] held that the regulations were applicable only to voluntary dispositions and not to situations where the shipper and carrier resort to the litigation process. 618 F.2d at 445. Finding the regulations inapplicable, the court applied the case law decided prior to the promulgation of the regulations.[8] The court found that prior to the regulations, written claims that did not contain a stated damage amount were nonetheless valid. *See e.g., Thompson v.*

*James G. McCarrick Co.,* 205 F.2d 897, 900–01 (5th Cir.1953); and *American Synthetic Rubber Corp. v. Louisville & N.R. Co.,* 422 F.2d 462, 468 (6th Cir.1970). The court held that a written claim is not rendered invalid by virtue of the fact that it lacks a request for a specific amount of damages. *Id.* at 446. The court, noting that the reason for a written notice requirement was to afford a carrier an opportunity to inspect the damaged goods, held that the combination of actual and written notice had sufficiently served this purpose.[9]

The defendant, on the other hand, urges this Court to reject the rule of *Wisconsin Packing* and apply the ICC regulations. In support of its position, the defendant relies upon *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981). The pertinent facts of *Pathway* reveal that the only written communication during the 9 month period failed to state a specified or determinable amount of damages.[10] The Second Circuit declined to adopt the Seventh Circuit's voluntary/involuntary distinction and held that the ICC regulations were applicable and operated to displace previous inconsistent case law.

Considering this issue *de novo,* the Court is of the opinion that the Seventh Circuit's voluntary/involuntary distinction was neither intended nor mandated by the ICC

---

be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage; provided, however, that where claims are electronically handled, procedures are established to ensure reasonable carrier access to supporting documents.

(c) *Documents not constituting claims.* Bad order reports, appraisal reports of damage, notations of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carriers or their inspection agencies, whether the extent of loss or damage is indicated in dollars and cents or otherwise, shall, standing alone, not be considered by carriers as sufficient to comply with the minimum claim filing requirements specified in paragraph (b) of this section . . . .

Codified at 49 C.F.R. § 1005.2 (1982).

7. The applicable language reads: A claim for . . . damage to . . . cargo shall not be *voluntarily* paid . . . . 49 C.F.R. § 1005.2(a) (emphasis added).

8. In the alternative the court held that, even if the regulations applied, the shipper had complied with its requirements. 618 F.2d at 445.

9. *Id.* at 446–47. In *Wisconsin Packing,* the carrier kept the shipment with the intention of trying to resell the merchandise. The court was therefore of the opinion that the carrier was in as good of a position as the shipper to ascertain the actual dollar amount of damages. *Id.* at 443–44.

10. The shipper filed a second letter one day after the 9 month limitation period. 630 F.2d at 901.

regulations. The Court further believes that application of the distinction enhances a carrier's ability to discriminate between shippers and therefore flounts the purpose of the regulation and statutory framework. The Court, therefore, declines to adopt the Seventh Circuit's voluntary/involuntary distinction.

49 C.F.R. § 1005.1 which sets forth the regulations' applicability provides that it "shall govern the processing of claims for loss, damage . . . to property transported . . . in interstate . . . commerce by each . . . carrier subject to the Interstate Commerce Act." Furthermore, the ICC stated that:

[w]e are persuaded by the record in this proceeding that *our regulations should embrace the full range of matters relating to the filing of claims*, including a prescription of minimum filing requirements and a consideration of documents that do not constitute claims, and claims for uncertain amounts. . . .

Thus, the rules set forth in sections 1005.1 and 1005.2 . . . first establish their overall applicability and then set out the manner and form in which loss and damage claims must be filed by claimants in order to accomplish the improvements shown to be required in the public interest in this area.

*Ex Parte* No. 263, *supra*, n. 3, 340 I.C.C. at 555–56 (emphasis added).

Based upon an examination of the administrative history and an analysis of the regulations, the Court believes that the ICC does not require or intend that there be a dual standard for assessing the sufficiency of a claim, depending upon whether the carrier voluntarily decides to settle a claim or to contest it. See *Pathway Bellows, supra*, 630 F.2d at 904.

In holding that the regulations are inapplicable to disputed claims, the Seventh Circuit noted that the ICC "submitted various legislative proposals to increase its role in claims determinations" and "expressed its doubts about its authority to erect substantive barriers to legal claims recovery." *Wisconsin Packing, supra*, 618 F.2d at 445. The ICC recognized that it lacks "the

jurisdiction to determine the merits or the measure of damages" of a particular claim. *Ex Parte* No. 263, *supra* n.3, 340 I.C.C. at 539. However, as the Second Circuit stated in *Pathway Bellows*, "there is a vast difference between prescribing the form a properly constituted claim must take and that of determing the substantive merits of that claim." 630 F.2d at 904. It appears to this Court that it is within the ICC's "jurisdiction and authority to establish proper and reasonable procedures for the timely, proper, and efficient processing and disposition of loss, damage, and other similar claims." *Ex Parte* No. 263, *supra* n.3, 340 I.C.C. at 540. This view appears to be consistent with *Wisconsin Packing* as the Seventh Circuit merely held that the scope of the regulations was limited to undisputed claims.

In arriving at the conclusion that the regulations were not meant to apply to disputed claims, the *Wisconsin Packing* court found that "the purpose of the regulation was to make claim settlement more expeditious by providing procedures for the voluntary disposition of claims by carriers." 618 F.2d 445. It is this Court's opinion that the primary purpose behind the ICC regulations, as well as the Carmack Amendment and other legislative enactments in this area, was to prevent discrimination in the resolution of cargo claims and to insure against unlawful rebates. *See Ex Parte* No. 263, *supra* n. 3, at 529. The ICC believed that an efficient way to accomplish this goal was to encourage the voluntary settlement of claims. The ICC noted that:

The establishment of reasonable and uniform regulations and practices for the processing of loss and damage claims and the handling of salvage would reduce considerably the opportunity and, in some instances, the propensity of carriers to engage in such prohibited and discriminatory practices.

*Ex Parte*, No. 263, *supra* n. 3 at 544. It is the opinion of this Court that the Seventh Circuit's approach, rather than providing a remedy for discriminatory prac-

tices, operates to encourage such practices. Furthermore, the Seventh Circuit's rule operates to provide a disincentive for carriers to voluntarily settle cargo claims.

Under the Seventh Circuit's approach, a carrier is given the power to decide whether a claim will be voluntarily resolved pursuant to the ICC regulations or litigated in court according to the developing case law. Under the regulations, the receipt of a claim triggers numerous obligations on the part of a carrier. The carrier must: create an individual file and assign a file number to the claim 49 C.F.R. § 1005.3(b); acknowledge receipt of the claim within thirty days § 1005.3(a) and; dispose of the claim, in writing, within 120 days after its receipt § 1005.5. The Seventh Circuit's approach enables a carrier to decide, on a case by case basis, whether it will comply with the obligations imposed by the regulations. A carrier may comply with the regulations and settle the claims of its preferred customers while it drags other customers through the litigation process which impose none of the regulatory obligations upon it. Reduced to its essential, the regulations, as construed by the Seventh Circuit, provide a vehicle for a carrier to discriminate between shippers, the very evil the regulations were promulgated to remedy. Enabling a carrier to choose between voluntary settlement and litigation provides a carrier with economic incentive to forego the costs involved in the administrative procedure in much the same way that a carrier preferred to litigate prior to the regulations' promulgation. Thus, why should a carrier resolve a claim within 120 days of its receipt if a carrier can choose to resort to the long drawn out court process? *See Ex Parte* No. 263, *supra* n.3 at 526. Although the Seventh Circuit intended to afford the shipper additional protection against the carrier, the result would seem to be the opposite. The Court believes that the regulations, as written, must be applied to both disputed as well as undisputed claims. To construe the regulations otherwise is to sap it of its purpose. It appears to this Court that the regulations supercede the previously developed case law de-fining the components of a valid written claim under Section 2(b) of the bill of lading and is controlling in litigated disputes between shippers and carriers.

It is of some concern to the Court that the regulations add the requirement that a claim must state a specified or determinable amount of damages as this information was not previously required. *See e.g., Thompson v. James G. McCarrick Co.,* 205 F.2d 897, 900–01 (5th Cir.1953); and *American Synthetic Rubber Corp. v. Louisville & N.R. Co.,* 422 F.2d 462, 468 (6th Cir. 1970). This requirement appears to be quite rigid for an area that traditionally has been liberally construed. A close analysis of the regulations' history demonstrates that the requirement is not meant to be rigidly applied. The ICC stated:

> We believe that the rule of reason requires the situation of the claimant and the opportunity afforded a carrier to investigate a claim must both be considered reconciled here. Unquestionably, if the contract of carriage dictates (as is required by section 2 of the uniform domestic straight bill of lading) that a claim be filed within 9 months, then it certainly behooves a claimant to file within that time because otherwise his claim may be barred. *On the other hand, there are times when it is impossible for a claimant to determine accurately the amount that should be claimed. The purpose of a reasonable limitation period is to enable a carrier to investigate the factual situation giving rise to a claim while recollections are still possible and records continue to be available. The actual amount of the claim is not essential immediately to enable a carrier to institute its investigation and, while it should ordinarily be included in the claim, inclusion of the amount claimed is directory rather than absolute. Such amount should, of course, be made known to the carrier as soon as it becomes available in those instances where a claim has earlier been filed.*

*Ex Parte* No. 263, *supra* n. 3, 340 I.C.C. 554–55 (emphasis added).

It appears to this Court that after balancing the interests of the carrier with that of the shipper, the ICC decided to require a written claim to state a specific amount of damages unless such information is not immediately known. In such an event, the amount must be communicated to the carrier as soon as it becomes available. The commission attempted to balance the legitimate concerns of shippers who complained of carrier improprieties regarding the processing and disposition of cargo claims with charges of carriers that shippers often present spurious and frivolous claims. *Id.* at 524.

The Court will defer to the expertise of the ICC in this matter and will not upset the balance it struck. The ICC could reasonably believe that a specific dollar requirement would enhance the processing of claims. Indeed, the scope of the carrier's investigation may be affected by the amount of the claim. We agree with the Second Circuit's opinion that the ICC, by requiring the claimant to state a specific dollar amount, was in no way intending to afford carriers an unfair opportunity to escape liability.

> The minimum filing requirements appear to call for no more information than one ordinarily would expect a claim for damages to contain and. compliance with these requirements is neither onerous nor unreasonable. To the extent that carriers may escape liability, such "windfalls" may be properly traced, not to the existence of the regulations, but to shippers' unexcused failure to comply with a reasonable condition contained in bills of lading.

630 F.2d at 903 n. 5. Furthermore, as previously noted, the receipt of the claim triggers numerous obligations on the part of a carrier. One of the last of these obligations requires the carrier to dispose of the claim, in writing, within 120 days of its receipt. 49 C.F.R. § 1005.5. It is, therefore, essential for the carrier to know the dollar amount of the claim in order to meet its obligation under the regulations. Therefore, it is not unfair to require a shipper to claim a specific amount of damages.

■ The rule the Court is adopting may be stated as follows: Under the applicable ICC regulations, a shipper is required to file a written notice containing a claim for a specified or determinable amount of money. If information concerning the amount of damages is not immediately available it must be communicated in writing within a reasonable time after the shipper reasonably gains such knowledge.

■ Applying the rule as developed to the facts at bar, it appears that G.E. is barred from pursuing its claim. G.E. had knowledge of the actual amount of damages on or about August 30, 1982. They failed, however, to communicate this information to Brown for more than two months. G.E. did not attempt to contact Brown even though Brown never acknowledged, as G.E. had requested, the receipt of its March 9 letter. Testimony at trial revealed that G.E. had received insurance proceeds well before the letter of November 15 was sent. This may very well account for G.E.'s carelessness in failing to inform Brown of the damage amount. It is thus not unfair to hold in favor of the carrier. Further, it should be noted that Brown's conduct in no way misled G.E. to believe that there was no need to file a written claim. If such were the case, Brown would be estopped from insisting upon G.E.'s compliance with the timely written claim requirement contained in the bill of lading.[11]

The Court, therefore, enters judgment in favor of the defendant Brown.

IT IS SO ORDERED.

---

11. *See e.g., Perini-North River Assoc. v. Chesapeake & O. Ry.,* 562 F.2d 269, 272–73 (3d Cir. 1977).